FILED

FEB 26 2021

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
______ DIVISION

Paul A. Wilson #1739074
Plaintiff's Name and ID Number

Alfred Hughes Unit, Gatesville, Tx.
Place of Confinement

CASE NO. SA21CA0188 JKP
(Clerk will assign the number)

v.

Dewayne Ransaer, Alfred Hughes Unit
Defendant's Name and Address

Joshua Deland, Alfred Hughes Unit
Defendant's Name and Address

Samatha Simons, Alfred Hughes Unit
Defendant's Name and Address
( DO NOT USE "ET AL.")

INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

## FILING FEE AND *IN FORMA PAUPERIS* (IFP)

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus a administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to procee *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting fortl information to establish your inability to prepay the fees and costs or give security therefor. You must also includ a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in formc pauperis* data sheet, from the law library at your prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis*.)

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

## CHANGE OF ADDRESS

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

## I. PREVIOUS LAWSUITS:

A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ✓ YES __ NO

B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: OCtobER 6, 2014
2. Parties to previous lawsuit:
   Plaintiff(s) PAUL A. Wilson
   Defendant(s) William F. Nix Et Al
3. Court: (If federal, name the district; if state, name the county.) SOUTHERN DISTRICT OF TEXAS
4. Cause number: 3:14-CV-00321
5. Name of judge to whom case was assigned: KENNETH M. HOYT , GEORGE C. HANKS JR.
6. Disposition: (Was the case dismissed, appealed, still pending?) TERMINATED
7. Approximate date of disposition: MARCH 12, 2018

II. PLACE OF PRESENT CONFINEMENT: Alfred Hughes unit, Gatesville Tx.

III. EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure? ✓ YES ___ N

Attach a copy of your final step of the grievance procedure with the response supplied by the institution

IV. PARTIES TO THIS SUIT:

A. Name and address of plaintiff: Paul A. Wilson, Alfred Hughes, RT 2 Box 4400, Gatesville, Texas 76597

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1: Dewayne Ransfer, Lieutenant, Alfred Hughes unit, RT 2 Box 4400 Gatesville, Texas 76597

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated Constitutional Rights by using Excessive Force. Const. Amend 8, 14

Defendant #2: Joshua Deland, Sergeant, Alfred Hughes unit, RT 2 Box 4400, Gatesville, Texas 76597

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated Constitutional Rights by using Excessive Force. Const. Amend 8, 14

Defendant #3: Samantha Simons, Sergeant, Alfred Hughes unit, RT 2 Box 4400, Gatesville, Texas 76597

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated Constitutional Rights by using Excessive Force. Const Amend. 8, 14

Defendant #4: Patrick Branden, Correctional Officer III, Alfred Hughes unit, RT 2 Box 4400, Gatesville Texas 76597

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated Constitutional Rights by using Excessive Force. Const. Amend 8, 14

Defendant #5: A. Marrero, Correctional Officer IV, Alfred Hughes unit, RT 2-Box 4400, Gatesville, Texas 76597

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
Violated Constitutional Rights by using deadly Force. Const. Amend. 8, 14.

Please see All the named defendants on written Complaint

V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

Please Refur to the Written Complaint.

VI. RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Compensatory damages in the amount of $1,000,000 against each defendant, jointly and severally. Punitive damages in the amount of $1,000,000. Against each defendant. A jury trial on all issues triable by jury. Plaintiff's cost in this suit

VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

Paul Alexander Wilson, Paul A. Wilson

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

#428813, #474635, #518555, #593659, #1739074

VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ___ YES ✓ NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (if federal, give the district and division): ________
2. Case number: ________
3. Approximate date sanctions were imposed: ________
4. Have the sanctions been lifted or otherwise satisfied? ___ YES ___ NO

C. Has any court ever warned or notified you that sanctions could be imposed? ____YES____N

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issue (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning (if federal, give the district and division):____________
2. Case number:____________
3. Approximate date warning was issued:____________

Executed on: ____________
DATE

____________

____________
(Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this 22nd (Day) day of FEBRUARY (month), 20 21 (year).

PAUL WILSON
Paul Wilson
(Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Pg 1 OF 2

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

PAUL WILSON
PLAINTIFF

VS

DEWAYNE RANSFER
JOSHUA DELAND
SAMATHA SIMONS
JAMES HALL
A. MARRERO
ELDRICK BIRDOW
JOHN ALBERT
PATRICK BEARDEN
JOHNNY JACKSON
BRIAN WILKINS
A. MARTINEZ
JACKIE GASTON
PAYTON HAZEL
CYNTHIA LOFTON
CHIMDI AKWITTI
MICHAEL AKOBROOK
BOBBY LUMPKIN
DOUGLAS GREENE
LAVERNADENE COUCH
STEEIVE JACOBS
LENA GREENE
DEFENDANTS

## ORDER TO SHOW CAUSE FOR AN PRELIMINARY INJUNCTION AND A TEMPURARY RESTRAINING ORDER

CIVIL ACTION NO. ______

Upon the Complaint, the Supporting Affidavits of the Plaintiff and the Memorandum of Law Submitted Herewith, it is:

ORDERED that defendants, DEWAYNE RANSFER, JOSHUA DELAND, SAMATHA SIMONS, JAMES HALL, A. MARRERO, ELDRICK BIRDOW, JOHN ALBERT, PATRICK BEARDEN, JOHNNY JACKSON, BRIAN WILKINS, A. MARTINEZ, JACKIE GASTON, PAYTON HAZEL, CYNTHIA LOFTON, CHIMDI AKWITTI, MICHAEL AKOBROOK, BOBBY LUMPKIN, DOUGLAS GREENE, LAVERNADENE COUCH, STEEIVE JACOBS, LENA GREENE AND ALL PERSONS ACTING IN CONCERT AND PARTICIPATION WITH THEM, SHOW CAUSE IN ROOM, SUITE G-65, OF THE UNITED STATES COURTHOUSE, 655 EAST CESAR E. CHAVEZ BLVD, SUITE G-65, SAN ANTONIO, TEXAS 78206, ON THIS DAY OF FEBRUARY, 2021 AT ___, O'CLOCK, WHY A PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER SHOULD NOT BE ISSUED PURSUANT TO RULE 65 (A) OF THE FEDERAL RULES OF CIVIL PROCEDURE ENJOINING THE DEFENDANTS, THEIR SUCCESSORS IN OFFICE, AGENTS AND EMPLOYEES AND ALL OTHER PERSONS ACTING IN CONCERT AND PARTICIPATING WITH THEM, FROM ALL ACTS OF RETALIATION. WEATHER IT BE, HAZING, ABUSIVE LANGUAGE, INSTIGATING OR PARTICIPATING IN A VERBAL CONFRONTATION OR ALTERCATION, USE OF DEADLY OR EXCESSIVE FORCE, RECKLESS ENDANGERMENT, DISCRIMINATION / HARASSMENT, AND NOT TO EXCLUDE, TAMPERING WITH LEGAL ACTIVITIES WHILE THE PLAINTIFF IS PETITIONING THE COURTS. MISUSE OF OFFICIAL

Authority, Falsification of State's administrative Forms/Documents or Dis-ciplinary violations and Reports, illegal search and seizure of property, violations of Rights to Adequate Medical Care.

It is Further ordered that effective immediately, and pending the hearing and determination of this order to show cause, the defendants and not to exclude the Alfred Hughes unit's Staff and Administration where petitioner currently resides at the present. And each of their officers agents employers, and all person acting in concert or participation with them are restrained from all acts of Retaliation, weather it be hazing, abusive language, instigating or participating in a verbal confrontation or altercation, use of deadly or excessive force, reckless endangerment, discrimination, harassment, and not to exclude, tampering with legal activities while plaintiff petitions the courts, misuse of official authority, falsification of statements or administrative forms and documents such as disciplinary violations or Reports

It is further ordered that the order to show cause, and all other papers attached to this application be served on the aforesaid plaintiff by: DATE ______, __, 2021

JUDGE'S SIGNATURE

DATE ___, __, 2021

Print NAME:
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS

Paul Wilson
Plaintiff

VS

Civil Action No. ______

DEWAYNE RANSFER
JOSHUA DELAND
SAMATHA SIMONS
JAMES HALL
A. MARRERO
Eldrick Birdow
JOHN ALBERT
PATRICK BEARDEN
JOHNNY JACKSON
BRIAN WILKINS
A. MARTINEZ
JACKIE GASTON
PAYTON HAZEL
CYNTHIA LOFTON
CHimdi AKWitti
MICHAEL Alsobrook
Bobby Lumpkin
Douglas GREENE
LAVERNADENE COUCH
STEEIVE JACOBS
LENA GREENE
DEFENDANTS

# MOTION FOR APPOINTMENT OF COUNSEL

PURSUANT to 28 USC § 1915 (E) (1) Plaintiff MOVES AN ORDER Appointing Counsel to REPRESENT Him in this CASE. IN Support OF this motion, the plaintiff states:

Plaintiff Filed His grievances months Ago, but Continuously FACES All types OF Retalitory Hurdles. AN Avalanche OF Harassment, Cell transfers, being placed in Special Housing units, moves without Cause, denied proper Food And Hygene Supplies, legal papers being intercepted, mail being lost, the use OF bogus disciplinary-Case writting, in order to Keep the Plaintiff ON lengthy terms OF lossed privileges.

Plaintiff Has AN "intellectual disability": And Has AN E A SCORE OF 5.7. And AN I.Q test Score OF 60

Plaintiff speaks Alot better than He writes. So, He would be able to Explain His Case much better through Verbal Communication With A Lawyer. Even though the plaintiff Knows How too Read And Write, Applying the law is to Complex AN ISSUE

Plaintiff is AN indigent And CANNOT Afford Counsel

Plaintiff Has NO way to obtain Affidavits or other important Evidence that may be of greate importance to the out Come OF this Suit

Plaintiff Alleges that Credibility (whether or not A witness is telling the truth) will be important, So that A Lawyer will need to Conduct Cross Examination(s)

Plaintiff Has injuries that limits His Writting.

Plaintiff Has been limitted too minimal use of the law library because of the use of bogus disciplinary case writting. And continues to be subjucted too cruel and unusual punishment

Wherefore, Plaintiff request that the Court Appoint A member of the Bar as Counsel in this case

Wherefore, Plaintiff respectfully prays that this Court grant much needed assistance.

Paul Alexander Wilson

Paul Alexander Wilson

February , 2021

 Pg 1 OF 1

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS

PAUL WILSON
PLAINTIFF

VS

DEWAYNE RANSFER
JOSHUA DELAND
SAMANTH SIMONS
JAMES HALL
A. MARRERO
ELDRICK BIRDOW
JOHN ALBERT
PATRICK BEARDEN
JOHNNY JACKSON
BRIAN WILKINS
A. MARTINEZ
JACKIE GASTON
PAYTON HAZEL
CYNTHIA LOFTON
CHIMDI AKWITTI
MICHAEL ASBOBROOK
BOBBY LUMKIN
DOUGLAS GREENE
LAVERNADENE COUCH
STEEVE JACOBS
LENA GREENE
DEFENDANTS

SUMMONS
CIVIL ACTION NO.

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON THE PLAINTIFF, WHOSE ADDRESS IS: PAUL WILSON, TDCJ-ID NO. 1739074, ALFRED HUGHES UNIT, RT 2 BOX 4400, GATESVILLE TEXAS 76597 AN ANSWER TO THE COMPLAINT WHICH IS HEREWITH SERVED UPON YOU, EXCLUSIVE OF THE DAY OF SERVICE, OR 60 DAYS IF THE U.S GOVERNMENT OR OFFICER/AGENT THEREOF IS A DEFENDANT. IF YOU FAIL TO DO SO, JUDGEMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT

CLERK OF THE COURT

DATE

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS

PAUL A. WILSON
PLAINTIFF

V

DEWAYNE RANSFER
JOSHUA DELAND
SAMANTH SIMONS
JAMES HALL
A. MARRERO
ELDRICK BIRDOW
JOHN ALBERT
PATRICK BEARDEN
JOHNNY JACKSON
BRIAN WILKINS
A. MARTINEZ
JACKIE GASTON
PAYTON HAZEL
CYNTHIA LOFTON
AKWITTI CHIMDI
MICHAEL ALSOBROOK
BOBBY LUMKIN
DOUGLAS GREENE
LAVERNADENE COUCH
STEEIVE JACOBS
LENA GREENE
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES
DEFENDANTS

## COMPLAINT

Civil Action No.

## JURISDICTION & VENUE

This Civil Action Authorized by 42 USC section 1983 to Redress the deprivation under color of state law, of the Rights secured by the Constitution of the United States. This Court has jurisdiction under 28 USC section 1331 and 1343 (A) (3) Plaintiff seeks declaratory relief pursuant to 28 USC section 2201 and 2202. The Plaintiffs claims for injunctive relief are authorized by 28 USC section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure. Americans with Disabilities Act of 1990 (ADA) 42 USCS § 12101 Et. SEQ. Rehabilitation Act of 1973 (29 USCS § 701-Et. SEQ.

The Western District of Texas is an appropriate venue under 28 USC section 1391(b)(2) because it is where the events given rise to this claim occurred

Continue on next page

PLAINTIFF PAUL ALEXANDER WILSON IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF TEXAS IN THE CUSTODY OF THE TEXAS DEPARTMENT OF CORRECTIONS. HE IS CURRENTLY CONFINED IN ALFRED HUGHES UNIT IN, GATESVILLE, TEXAS

THE FOLLOWING DEFENDANTS ARE ONLY BEING SUED IN THEIR "OFFICIAL CAPACITY" FOR INJUCTIVE RELIEF:

BOBBY LUMPKIN, DIRECTOR
CYNTHIA LOFTON, WARDEN
MICHAEL ALSOBROOK, ASSISTANT WARDEN

PLAINTIFFS

Plaintiff Paul Alxander Wilson, is and was at all times mentioned herein a prisoner of the State of Texas in the custody of the Texas Department of Corrections. He is currently confined in Alfred Hughes Unit, in Gatesville, Texas.

DEFENDANTS

Defendant Bobby Lumpkin, is the Director of the State of Texas. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Alfred Hughes Unit.

Defendant Cynthia Lofton, is the Warden. She is legally responsible for the operation of Alfred Hughes Unit and for the welfare of all the inmates of that prison

Defendant Chimdi Akwitti, is the Assistent Warden. He is also legally responsible for the operation of Alfred Hughes Unit and for the welfare of all the inmates of that prison

Defendant Alsobrook, Michael, is the Assistent Warden, He is also legally responsible for the operation of Alfred Hughes Unit and for the welfare of all the inmates of that prison

Defendant Dewayne Ransfer, is a Correctional Officer of the Texas Department of Corrections who, at all times mentioned in this Complaint, held the rank of Lieutenant and was assigned to Alfred Hughes Unit.

# DEFENDANTS

DEFENDANT SAMATHA SIMONS, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF SERGEANT AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT JOSHUA DELAND, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF SERGEANT AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT A. MARRERO, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK, [illegible] AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT ELDRICK BIRDOW, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK, SERGEANT. AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT JAMES HALL, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK, CO. III, AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT JOHNNY JACKSON, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK, SERGEANT. AND WAS ASSIGNED TO ALFRED HUGHES UNIT.

DEFENDANT PATRICK BEARDEN, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK, CO. III AND WAS ASSIGNED TO ALFRED HUGHES UNIT

# DEFENDANTS

DEFENDANT LAVERNADENE COUCH, IS A LICENSED VOCATIONAL NURSE, AND A EMPLOYEE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH CORRECTIONAL MANAGED CARE (UTMB/CMC), WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE TITLE OF LICENSED VOCATIONAL NURSE (LVN) AND WAS ASSIGNED TO ALFRED HUGHES UNIT.

DEFENDANT JACOBS, STEIVEE, IS A LICENSED VOCATIONAL NURSE AND A EMPLOYEE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH CORRECTIONAL MANAGEMENT CARE (UTMB/CMC), WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE TITLE OF LICENSED VOCATIONAL NURSE (LVN), AND WAS ASSIGNED TO ALFRED HUGHES UNIT.

DEFENDANT LENA GREEN, IS A MENTAL HEALTH CLINITION, AND A EMPLOYEE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH CORRECTIONAL MANAGEMENT CARE (UTMB-CMC). WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE TITLE OF MENTAL HEALTH CLINICIAN, AND WAS ASSIGNED TO ALFRED HUGHES UNIT

DEFENDANT BRIAN WILKINS, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF CO. II, AND WAS ASSIGNED TO THE ALFRED HUGHES UNIT.

DEFENDANT JOHN ALBERT, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF SERGEANT AND WAS ASSIGNED TO ALFRED HUGHES UNIT.

DEFENDANT PAYTON HAZEL, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF CO. II AND WAS ASSIGNED TO THE ALFRED HUGHES UNIT

DEFENDANT JACKIE GASTON, IS A COUNSEL SUBSTITUTE (I) ONE, WHO IS A EMPLOYEE OF TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE TITLE OF COUNSEL SUBSTITUTE, AND WAS ASSIGNED TO THE ALFRED HUGHES UNIT

# DEFENDANTS

DEFENDANT A. MARTINEZ, IS A CORRECTIONAL OFFICER OF THE TEXAS DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF CAPTAIN (DISCIPLINARY HEARING OFFICER - DHO), AND WAS ASSIGNED TO THE ALFRED HUGHES UNIT

DEFENDANT DOUGLAS GREENE IS A MEDICAL DOCTOR (MD) AND A EMPLOYEE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH / CORRECTIONAL MANAGED CARE (UTMB / CMC) WHO AT ALL TIME MENTIONED IN THIS COMPLAINT, HELD THE TITLE OF MEDICAL DOCTOR (MD) AND WAS ASSIGNED TOO THE ALFRED HUGHES UNIT'S MEDICAL DEPARTMENT.

EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW

# FACTS

ON THE DATE OF SEPTEMBER 3, 2020, A OFFICE JAMES HALL CAME TO THE CELL DOOR, AND THEN ASKED ME WAS I GOING TO GET MY INSULIN SHOT AT 8 BUILDING'S MEDICAL DEPARTMENT? ME AND MY CELLMATE VICTOR CANTU WAS TALKING WHEN OFFICE HALL CAME UP. I (PAUL WILSON), ANSWERED OFFICER HALL BY SAYING YES. AND I STARTED PUTING ON MY CLOTHES. AFTER I GOT DRESSED, OFFICER HALL CUFFED ME IN THE FRONT POSITION. AND HE PUT HIS HAND ON MY SHIRT SLEEVE, THEN HE STARTED TUGGING ON MY UPPER ARM SO THAT WE COULD START WALKING. I COULD SMELL THE LOUND ODER COMING FROM HIS RUBBER GLOVED HAND. AND WHEN I STARTED TOO COMPLAIN ABOUT THE SMELL, HE THEN SAID, MAN IT AINT NOTHING. AND WHEN HE LIFTED HIS HAND, I COULD SEE GARBAGE JUICE LITERALLY RUNNING DOWN MY SHIRT SLEEVE. I POINTED THE WET LOOKING HAND PRINTS OUT TOO OFFICER HALL, BUT HE JUST GRABBED ME BY THE ARM AGAIN. AND THEN CONTINUED TO PULL ME ALONG. BY THE TIME THE TRIAGE-ESCORT AND I MADE IT TO THE ADMINISTRATIVE OFFICE, HE GOT TIRED OF ME COMPLAINING. AND SEEING THE FILTH HIM SELF (ON MY SHIRT SLEEVE), HE JERKED THE GLOVES OFF. AND THEN SLAMMED THEM ON THE FLOOR. THEN GRABBED ME BY THE UPPER ARM AGAIN AND CONTINUED THE ESCORT. WHEN WE ENTERED THE MEDICAL DEPARTMENT, I IMMEDIATELY STARTED TO VOICE MY COMPLAINT TOO THE TRIAGE NURSE. I STARTED BY INFORMING HER THAT I WAS SITTING IN MY CELL LISTENING TO THE RADIO. AND THAT THEY WERE TALKING ABOUT THOUSANDS OF CASES OF THE CORONAVIRUS (RIGHT DOWN THE ROAD). AND THEN TOLD HER ABOUT OFFICER HALL PICKING UP TRASH, FEEDING CHOW, AND DOING ESCORTS TO THE MEDICAL DEPARTMENT FOR DIABETIC TRIAGE (INSULIN SHOTS), ALL WITH THE SAME PAIR OF GLOVES ON. IT WAS AT THIS TIME THAT I LOOKED OVER AT LIEUTENANT DEWAYNE RANSTER, WHO WAS NOW HAZING AT ME. LIEUTENANT RANSTER WAS SITTING INSIDE THE MEDICAL DEPARTMENT WITHOUT A MASK ON. LIEUTENANT RANSTER STATED THAT HE DID NOT GIVE A FUCK ABOUT THE CORONAVIRUS SPREADING, MY LIFE, OR ANYBODYELSES LIFE BEING LOST. AND THAT ALL THAT HE CARED ABOUT WAS ME GETING THE FUCK OUT OF THE INFIRMARY. ON A COUPLE OF MORE OCCASSIONS LIEUTENANT RANSTER WOULD GO ON TOO TAKE HIS SHOTS AT ME BY USING LANGUAGE THAT WOULD PROVOKE THE ADVERAGE PERSON. WITH STATEMENTS LIKE THATS WHY WE PULL PEOPLE OUT AND BEAT THE SHIT OUT OF THEM!

ON SEPTEMBER 14, 2020 AT 3:25-3:30, AND AT THE (AH) 8 BLDG ADMINISTRATION OFFICE, LIEUTENANT DEWAYNE RANSTER, CALLED ESCORT OFFICER PATRICK BEARDEN CO. III, AND MYSELF TOO THE ENTRANCE DOOR OF THE 8 BUILDING'S ADMINISTRATION OFFICE. THE LIEUTENANT RANSTER ASKED OFFICER PATRICK BEARDEN, CO. III, WHY THE FUCK DO YOU

Have that lit snitch ass bitch cuffed in the front? The escort officer, Patrick Bearden, pointed at my cane. And then stated that he also has papers showing that he got a spinal injury. Lieutenant Ransfer's reply was, well that bitch aint got one today. So take that cane away from him, and then cuff him in the back. As officer Patrick Bearden was pulling out his key to do so. And then pulling the key out, Lieutenant Ransfer stated, No!, bring his ass in here.

Upon entering the Administration Office, I immediately recognized Sergeant Samantha Simons. And Sergeant Joshua Deland was also sitting in the office. The officer were already laughing with amusement. As if they knew something that I didn't. Lieutenant Ransfer told the escort officer, Patrick Bearden too take my cane away from me. And cuff that nigga in the back. Officer Bearden took his key and undid one side of the handcuffs and then tried too put my hands behind my back, he realized that he was hurting me. And he also reallized that my arms would not go that far back, he put my cuffs back too the front position at this time, Sergeant Joshua Deland stated that the Black Warden said that they should/shall take all the walkers and canes from all yo geriatric ass bitches. When I asked which warden had ordered such a thing? Sergeant Joshua Deland answered with, the Black Warden my nigga. Sgt. Samantha Simons echoed, yeah my nigga, the Black one my nigga. Lieutenant Ransfer jumped up and started pulling on me and my cane, and the other officers joining in. My cane was snatched away and thrown into a cornner of the office. Lieutenant Ransfer started pulling my arms backwards, until I was literally screaming out in excruciating pain. And then forced a pair of handcuffs on my arms to the backwards position. Some where during this ordeal, Sergeant Eldrick Birdow walked into the office. But when I asked him about geting a camera (asking for help), he said that he didnt have anything to do with it. And then left the office. When I told Sergeant Deland that I was tell the Black Warden what he had said, Sergeant Deland, went for my neck and throat. One of the other officers yelled out, watch out! watch out for the camera!! That nigga still standing in the view of the camera cause he still standing in the front part of the office!. Sergeant Deland let go, and and then started motioning for me to come a little farther back into the office (with his hand). Once he saw that I was not moving, Sergeant Deland promised me that he was going to get me later

WHEN I ASKED LIEUTENANT RANSFER FOR MY WALKING CANE BACK, HE SAID THAT, THAT THEY WAS GOING TO TELL THE OTHERS THAT I HAD HIT ONE OF THEM WITH THE CANE. I WAS HANDED OVER TOO ANOTHER OFFICER (MARRERO). OFFICER MARRERO, A., CO. II, WHO DRAGGED ME ALONG BY THE ARM TOO SEE THE TRIAGE NURSE, WHO WAS ADMINISTERING THE INSULIN-SHOTS (SEPTEMBER 14, 2020 AT OR ABOUT 3:33 PM), LAVERNEDENE COUCH (LVN). AS SOON AS OFFICER MARRERO AND I HAD ENTERED THE MEDICAL DEPARTMENT, I STARTED TO EXPLAIN THE INCIDENT THAT HAD TAKEN PLACE INSIDE THE OFFICE; AT FIRST THE NURSE DID NOT SEEM THAT INTERESTED IN WHAT I WAS SAYING UNTIL, OFFICER MARRERO YELLED OUT LOUD, SO YOU SNITCHING NOW???? AS CONTINUED TO TRY TOO EXPLAIN TO THE TRIAGE NURSE ABOUT HOW LIEUTENANT RANSFER HAD BEEN RETALIATING AGAINST ME FOR ME REPORTING THE CORONAVIRUS-PROTOCOL VIOLATIONS THAT LIEUTENANT RANSFER AND THE REST OF THE OFFICERS WERE NOT ADHEARING TOO. LIEUTENANT RANSFER, SERGEANT DELAND AND SERGEANT SIMONS CAME INSIDE THE INFIRMARY. BUT THIS TIME THEY BROUGHT THE UOF CAMERA WITH THEM. AS I TALKED FROM CAMERA TOO NURSE, AND NURSE BACK TO THE CAMERA, YOU COULD ACTUALLY SEE SERGEANT SIMONS AND SERGEANT DE-LAND LAUGHING AND TAUNTING ME. LIEUTENANT RANSFER WAS STANDING THERE SMILING SADDISTICALLY. OFFICER MARRERO WAS POSITIONED BEHIND ME. AND OFFICER PATRICK BEARDEN, WAS STANDING ON THE SIDE OF ME. LIEUTENANT RANSFER GAVE A HEAD NOD AND OFFICE MARRERO VICIOUSLY ATTACKED ME FROM BEHIND. AND WHILE CHOKING ME AND TWISTING MY HEAD AT THE SAME TIME, PICKED ME UP BY MY HEAD AND NECK AND THEN DOVE FARWARD WITH ME. I WAS CRASHED INTO THE CONCRET FLOOR HEAD FIRST. OFFICER MARRERO MADE SURE THAT HE PUT ALL OF HIS WEIGHT IN TO THE DRIVE. (OFFICER MARRERO WEIGHS 400 POUNDS EASILY) AND STANDS AROUND 6 FOOT 4 INCHES TALL. AND WHILE I WAS LAYING THERE ON THE FLOOR, OFFICER MARRERO PICKED ME UP BY THE HAND CUFFS, AND THEN DROVE ME FACE FIRST INTO THE CONCRET FLOOR. AFTER THE SECOND DRIVE, OFFICER MARRERO AIMMED HIS KNEE FOR MY INJURED SPINE, AND THEN CAME CRASHING DOWN ON IT (MY SPINE) WITH ALL OF HIS 400 POUNDS. AND THEN POSED FOR THE UOF-CAMERA. OFFICER MAR-RERO STAYED IN THIS POSITION UNTIL SERGEANT ELDRICK BIRDOW CAME AND PULLED THE HUGE MAN OFF OF ME. OFFICERS, SERGEANT SIMONS, SERGEANT DELAND WOULD LAUGH AND TAUNT ME ALL THE WAY BACK TO MY CELL DOOR. AS I ENTERED MY CELL, SERGEANT DELAND, LEAND ON THE DOOR AND SAID THAT HE WAS STILL GOING TO GET ME. AND THAT I SHOULD STILL HOLLA AT THE BLACK WARDEN MY NIGGA? AND THE HE AND SERGEANT SIMONS WENT, LAUGHING DOWN THE STAIRS AND OUT OF THE DOOR.

ON THE MORNING OF SEPTEMBER 23, OFFICER MARRERO CAME to THE CELL door WITH A PAIR OF HANDCUFFS AND SAYS, PUT THESE ON SO YOU CAN go SEE Lt. BANSPER (OOPS), I MEAN UNIT CLASSIFICATION COMMITIE (UCC) - 8 Bld, J-Pod 43 CELL

ON SEPTEMBER 28, 2020, AFTER THE MORNING RECREATION, Sgt SIMONS AND OFFICER MARRERO WERE SEEN USING DEADLY FORCE ON A INMATE (WHO WAS LIVING IN 8 BUILDING, J-POD, 39 CELL), OFFICE MARRERO WAS LAYING ON TOP OF THE GROUNDED INMATE, PUNCHING HIM IN THE HEAD NECK AND FACE AREAS. THIS OFFENDER WAS ALSO HANDCUFFED BEHIND HIS BACK

ON ANOTHER DATE, WHILE I WAS ON MY to SEE THE INSULIN TRIAGE NURSE, AND At 8 BUILDING CONTROL DESK, Sgt. SIMONS AND OFFICER MARRERO WERE YELLING THREATS AND TAUNTING ME ABOUT THE INCIDENT THAT TOOK PLACE ON SEPTEMBER 14 2020. Sgt SIMONS ALSO SAID THAT I WOULD NOT GET A CHANCE to VISIT WITH THE UNIT'S X-RAY TECHNITION. AND ON THIS DAY, I OFFENDER PAUL WILSON WAS SOME HOW FORGOTTEN (SEPTEMBER 30, 2020, at OR ABOUT 3:25 pm)

ON SEPTEMBER 30, 2020, At OR ABOUT 5:30 pm, Sgt SIMONS CAME to THE CELL door (8 BUILDING, J-POD, 43 CELL), AND STATED, BITCH ASS NIGGA, YOU CAN NOT WIN BECAUSE I FUCK WIT SMITH, AND ALL THE EVIDENCE GONNA BE GONE REAL SOON

ON ANOTHER DATE, I COULD HEAR Sgt. SIMONS BRAGGING to ANOTHER OFFICER ABOUT ANOTHER USE OF FORCE (OFFICER THORNE). THEY WERE SITTING IN THE ADMINISTRATION OFFICE. SHE (Sgt SIMONS) WAS BRAGGING ABOUT USING HER SIZE (6'2") SIX FOOT TWO INCHES TALL. AND HOW SHE SLAPPED SOME NIGGER IN THE FACE. I (PAUL WILSON), WAS COMING FROM SEEING THE INSULIN TRIAGE-NURSE.

SINCE this incident Harrassment And Retaliation, And Conspiring Has Continued to take place. I spent almost a whole week without being able to walk at all, No insulin or anything. I kept asking officers and nurses to see a doctor. So, I actually Had to go around what was clearly conspiring And wrote the Medical Administrator (via-Truck Mail). It was the Administrator who scheduled the appointment (16 days Had passed). My cell mate Victor Cantu Had to do Alot of baby sitting, As the officers made threats that if He said anything about the incident, they would get Him too. And on numerous dates, they made attempts to get Him out of the cell. Offender Cantu Had Also Reported COVID-19-Protocol violations. Retaliation Had got so bad For Him that, He Actually Had to Contact His Family and other outside agencies.

ON the date of my disciplinary Hearing, ONE of the same officers that Had Used or witnessed the use of deadly force on me, came with a pair of Handcuffs telling me too put my Hands behind my back. When I told Him that He Know that I was not physically capable of being cuffed behind my back, He said thats your Refusal. And then left laughing.

ON September 23, 2020, Officer Marrero, A. Co. III, showed up with a pair of Handcuffs, And Asked me was I going to Unit Classification Committie (UCC), And Answered His own Question by stating that He gon back cuff me And take me too the Office. And then said, OH Now you Scared?? And then left

"DOCTOR NASIOTIS"

ON my first time seeing the doctor, about 5 officers were Hanging out in the Medical Department. The doctor was also there Amongst them (September 22, 2020. The only thing that He told me on this day (with officers), that because they did not give out Handcuff passes any more, The officer can do anything that they wanted to do too me. So I should grin and bare it (lol) The officers laughed at me also, which clear showed that they were listening in on our conversation. But on the date of September 23, 2020 The same doctor actually checked my back this time. He made me go throug a few test, which I failed at badly, And then gave me pain meds, ordered X-Rays, And the Referred me to a Specialist. The X-Rays showed damage. And my back issues Have continued.

ON MY FIRST SCHEDUALED X-RAY APPOINTMENT, SERGEANT SAMATHA SIMONS CAME BY AND TOLD MY CELLMATE AND I THAT I WOULD BE FORGOTTEN ON MY X-RAY APPOINTMENT. AND THAT EXACTLY WHAT HAPPENED. I SPOKE WITH A NURSE ABOUT THE MATTER. THE TRIAGE NURSE CALLED MEDICAL (10 BUILDING) AND SOME SAID THAT THE ESCORTS ON 8 BUILDING NEVER DID BRING ME. THE TRIAGE NURSE WAS VERY PROFESSIONAL ABOUT THE MATTER. AND THEN GOT ME SCHEDUALED FOR THAT FRIDAY OCTOBER 2, 2020.

ON OCTOBER 2, 2020, AN OFFICER (HOWARD) CAME AND GOT ME FOR X-RAYS. HE BROUGHT A RESTRAINT STRAP TOO ESCORT ME WITH. AS WE WERE WALKING, OTHER OFFICERS WERE (AND SOME STILL DO), HAZING. AND ASKING ME QUESTION ABOUT HOW I HAD SUPPOSEDLY HIT ONE OF THE OFFICERS WITH A CANE. BECAUSE OF THESE OFFICERS SPREADING LIES (LIBEL / DEFAMATION), THE ATTACK ON ANY GOOD REPUTATION THAT I MAY HAVE HAD, IS COMPLETELY DESTROYED. I AM ASKED DAILY (BY NEW OFFICERS, WHY I HIT SOMEONE WITH A CANE? ON THE DAY AFTER THE INCIDENT SERGEANT BIRDOW CAME TO MY CELL DOOR WITH MY WALKING CANE; AND THEN SAID; HERE YOU GO OLD SCHOOL, AND THEN HE ASKED WAS I ALRIGHT? BUT HE COULD TELL THAT I WASN'T.

ONCE THE OFFICERS, KNEW THAT THEY COULD NOT TELL THE LIE TO EVERY ONE BECAUSE SOME WITNESSES ACTUALLY SAW THAT THESE OFFICERS WERE THE ONES WHO TOOK MY WALKING CANE. AND WITNESSES ALSO KNEW THAT LIEUTENANT RANSFER HAD CUFFED ME BEHIND MY BACK. SO THEY WENT WITH ANOTHER STORY. THIS STORY CONSISTED OF ME ASSAULTING OFFICER MARRERO. WHICH IS ALSO A LIE.

## COVID-19 PROTOCOL

ON THE DATE OF INCIDENT (SEPTEMBER 3, 2020), OFFICER HALL WAS DOING THREE DIFFERENT TASK WITH ONE PAIR OF RUBBER GLOVES. HE WAS PICKING UP TRASH FEEDING CHOW, AND DOING ESCORTS WITH GLOVES THAT WERE SO DIRTY THAT HE EVENTUALLY PULL THEM OFF AND THEN THEW THEM DOWN ON THE FLOOR.

AFTER OFFICER HALL HAD THROWN HIS RUBBER-GLOVES ON THE GROUND, A SERGEANT JOHNNY JACKSON PICKED THEM UP AND SAID TOO OFFICER HALL THAT OH, SO, WE LISTENING TOO INMATES NOW? OFFICER HALL'S REPLY WAS, A FEW CURSE WORD SAID UNDER HIS BREATH.

"MEDICA CLAIMS"

ON OCTOBER 22, 2020, I FILED A STEP ONE MEDICAL GRIEVANCE STATING THAT I WAS INJURED. AND THAT MY INJURY WAS DOCUMENTED ON THE RECORDS COMPUTER (SEE- GRIVANCES, STEP ONE AND STEP TWO), I WAS TOLD ON MY STEP TWO REPLY THAT THE MEDICAL ADMINISTRATOR HAS THE FINAL AUTHORITY OVER MEDICAL RESTRICTIONS. AND THAT I SHOULD SUBMIT A SICK CALL REQUEST ASKING TO BE EVALUATED BY THE MEDICAL DIRECTOR AND THAT ISSUES WITH SECURITY DENYING YOU TO GO DIFFERENT PLACES AND THE ISSUE OF ASSAULTS BY SECURITY ARE NOT UNDER THE PURVIEW OF HEALTH SERVICES. YOU MAY SUBMIT AN I-60 TO SECURITY/WARDEN CONCERNING THESE ISSUES. BUT THESE ISSUES, I HAD ALREADY ADDRESSED. I WROTE I-60 REQUEST FORMS TOO THE WARDEN ON NUMEROUS OCCASSIONS, AND EVEN THOUGH I DO NOT GET ANY REPLY, I ALSO WROTE AN I-60 REQUEST FORM TO THE MEDICAL DIRECTOR (MS. SMITH) WHO STATED IN HER REPLY ON A I-60 THAT I WROTE TO HER ON OCTOBER 8, 2020, I HAVE REVIEWED YOUR MEDICAL RECORDS. I FOUND NO EVIDENCE OF ANY TAMPERING WITH IT. I CANNOT ORDER A HANDCUFF PASS FOR YOU AND I AM NOT THE PROVIDERS SUPERVISOR. YOU NEED TO ADDRESS YOUR SECURITY ISSUE WITH TDCJ RANKING OFFICERS (SEE EXHIBIT - I-60 FORM DATED, OCTOBER 8, 2020). MY STEP ONE AND STEP TWO GRIEVANCES WERE NOT FILED UNTIL OCTOBER 22, 2020, AND NOVEMBER 15, 2020

ON THE DATE OF DECEMBER 13, 2020, MRI'S WERE TAKEN FOR A SECOND TIME. WITH THE ADDITION OF THE LUMBAR SPINE, MRI'S. THE MRI'S OF MY NECK (CERVICAL SPINE), REVEALED THAT, "DISK DISLOCATION IS [illegible] NOTED THROUGHOUT THE ENTIRE CERVICAL SPINE" (SEE EXHIBIT OF CERVICAL SPINE)

And damage (new damage), was noted at L4-L5, L5-S1, of the lumbar spine. There were also head findings, Hyperattenuating fluid collection within the left parietal scalp may represent an acute to subacute scalp hematoma. No underlying calvarial defect.

And in the MD's progress notes, (Mohanty Aaron, MD)(Staff) NS Neurological Surgery. It was noted that, surgical plan pending. And it was also noted that "Reasonable to have a no back cuff pass given degree of cervical spine disease.

On December 30th and 31st, 2020, I was denied insulin again by an officer Hawkins. Her reasons were, if you dont put you hands behind your back so I can cuff you, you aint geting no insulin shot.

On December 31, 2020, and after being denied insulin and showers again by officer Hawkins, I spoke with the triage nurse again (Laverne Gene Couch (LVN)) about the problem. I also gave too nurse Couch, a set of documents that were from Hospital Galveston stating that I needed a cuff pass because of the cervical spinal injury. Nurse Couch took these documents and left to present them to a Doctor Greene (who I had spoke with before), who said that he dont give out cuff passes to no body. When nurse Couch returned from the medical department, she gave the news that Doctor Greene had looked over the documents from Hospital Galveston, and then still refused to issue a cuff pass. A cuff pass had been issued on two previous units, and at Hospital Galveston

From this date on, even security officers who looked over the paper work from Hospital Galveston, found it unbelieving, and ludicrous, that medical would not issue the no back cuffing pass. It has been over a year now. And I still find myself begging officers not to cuff me in the back. And it still causes problems with security officer labling me

AS A WISE GUY WHO BUCKS OFFICER ORDERS, AND REFUSES to be HANDCUFFED behind His back. And SOME MEDICAL STAFF HAS labled ME AS A TROUBLE-MAKER. FOR REPORTING THE Abuse.

ON DECEMBER , 2020, I RECEIVED WHAT CAN ONLY be discribed AS A FRACTION OF MY ORIGINAL STEP ONE GRIEVANCE. I RECEIVED A ONE PAGE COPY OF WHAT WAS A FIVE (5) PAGE GRIEVANCE. AND A SECOND RETALIATION GRIEVANCE THAT I WROTE ON THE LIEUTENANT (DEWAYNE RANSFER), WAS NOT EVEN READABLE WHEN it WAS RETURNED (DEC. 28, 2020

ON FEBRUARY, 2, 2021, I WAS FINALLY SEEN by DOCTOR DOUGLAS GREENE AGAIN; AND AGAIN, I SPOKE WITH HIM (GREENE) About A NO CUFF behind the back PASS. I WAS told by DOCTOR GREENE that NO MATTER WHAT MY injury WAS, HE WAS Still Not going to give ME A PASS BECAUSE HE dont give PASSES too NO body.

At this SAME visit (Feb. 2, 2021), I clarified that my whole CERVICAL SPINE Had DISK DISLOCATION THROUGHOUT the ENTIRE CERVICAL SPINE. AND THAT THERE WAS NEW DAMAGE DONE too my lower back. I was told by Doctor GREENE that HE (GREENE) does Not get in SECURITY'S WAY; AND then HE (GREENE) SAID THAT I NEED too get with the Unit SECURITY About How they WANT to HANDCUFF ME, CAUSE HE HAd SOME OTHER STUFF that HAPPENED with ANOTHER INMATE

ON THE DATE OF FEBRUARY 5th, 2021, I WAS ONCE AGAIN being denied insulin shots (OFFICER BRIAN WILKINS). THIS OFFICER told ME that if I would not let Him CUFF ME FROM behind my back that I WAS not going to get ANY insulin today. He then turned AND left. And when I spoke with ANOTHER OFFICER About OFFICER WILKINS REFUSING to TAKE ME to get insulin, THE OFFICER SAID that OFFICER WILKINS told Him that I Had REFUSED AGAIN

# EXHAUSTION OF LEGAL REMEDIES

Plaintiff Paul Wilson used the prisoner grievance procedure available at Alfred Hughes Unit to try and solve the problem(s). On September 23, 2020 Paul Wilson presented the facts relating to his complaint. On October 6, 2020, plaintiff Paul Wilson was sent a response saying that the grievance had been denied. On October 21, 2020 he appealed the denial of the grievance.

# LEGAL CLAIMS

Plaintiff reallege and incorporate by reference to the facts

The beating(s), choking, and the use of deadly force by the officer Marrero who slammed the plaintiff too the concrete floor. And then came crashing down on the plaintiffs injured spine with his knee. All this was done while the plaintiff was hand cuffed behind his back. Deliberate indifference to the plaintiff's serious medical needs. Unsafe conditions. And discrimination against disabled person, violated plaintiff Paul Wilson's rights and constituted cruel and unusual punishment. And due process violations under the Eighth, Fourteenth Amendment to the United States Constitution.

The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

# PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT GRANTING PLAINTIFF

A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANTS DEWAYNE RANSTER, JOSHUA DELAND, SAMANTHA SIMONS, JAMES HALL, A. MARRERO ELDRICK BIRDOW, JOHN ALBERT, PATRICK BEARDEN, JOHNNY JACKSON, BRIAN WILKINS, A. MARTINEZ, JACKIE GASTON, PAYTON HAZEL, CYNTHIA LOFTON, CHIMDI AKWITTI, MICHAEL ALSOBROOK, BOBBY LUMKIN, DOUGLAS GREENE, LAVERNADENE COUCH, STEEIVE JACOBS, LENA GREENE, TO STOP ALL ACTS OF RETALIATION, SUCH AS, BEING PLACED IN ADMINISTRATIVE SEGREGATION WITHOUT CAUSE OR FALSELY UNDER ALL BOGUS CASE WRITING. FROM DENYING PROPER FOOD OR HYGIENE MATERIALS, TRANSFER TO OTHER MORE DANGEROUS PRISONS, INTERCEPTING LEGAL PAPERS, AND THE USE OF EXCESSIVE FORCE, DEADLY FORCE, AND ANY OTHER PHYSICAL ASSAULTIVE BEHAVIOR. AND THE USE OF CAMPAIGN HARRASSMENT.

THE PLAINTIFF PAUL WILSON HAS NOT BEEN ALLOWED TO VIEW HIS OWN MEDICAL RECORDS FOR OVER A YEAR AND A HALF. AND WOULD LIKE TO BE GIVEN A CHANCE TO VIEW HIS MEDICAL RECORDS. SO THAT HE MAY PROPERLY PRESENT HIS COMPLAINT TO THE COURT

THE PLAINTIFF HAS CONSTANTLY BEEN DENIED ANY RELEVANT LEGAL MATERIALS FROM THE LAW LIBRARY. I ACTUALLY HAVE TOO LITERALLY BUM A LARGE ENVELOPE TO MAIL YOU THIS COMPLAINT

Compensatory damages in the amount of $1,000,000 against each defendant, jointly and severally

Punitive damages in the amount of $1,000,000 against each defendant

A jury trial on all issues triable by jury

Plaintiff's costs in this suit

And any additional relief this court deems just, proper and equitable

DATED: February 22, 2021
Respectfully Submitted

Address: Paul Wilson, TDCJ-ID#1739074
Alfred Hughes Unit
RT 2 Box 4400
Gatesville, Tx, 76597

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct

Executed at Gatesville, Texas on Febuary , 2021
Paul Wilson
PAUL WILSON

# EXHIBIT (S)

(A) PROGRESS NOTES

(B) GRIEVANCE(S) # 2021022533, STEP ONE & STEP TWO

(C) GRIEVANCE(S) # 2021009850, STEP ONE & STEP TWO

(D) GRIEVANCE # 2021042876

(E) I-60 REQUEST FORM to MS SMITH

(F) I-60 REQUEST FORM to DR. GREENE

(G) LAST I-60 REQUEST FORM to MEDICAL RECORDS

(H) BOGUS DISCIPLINARY CASE FOR ASSAULT ON OFFICER

(I) TDCJ-USE OF FORCE REPORT

(J) LAST I-60 REQUEST FORM, REQUESTING "CUFF PASS"

(K) DENIAL FROM LAW LIBRARY.

Neurosurgery, Tdc
SUR-SURGERY



Mohanty, Aaron, MD
NS-NEUROLOGICAL SURGERY (Cosigner)

Spinal stenosis in cervical region
+1 more
Dx

New Evaluation

Reason for Visit

# Progress Notes

Mohanty, Aaron, MD (STAFF) • • NS-NEUROLOGICAL SURGERY

After discussion with Dr Zain, I agree with the resident's note as written by Dr. Carlton today. I actively participated in the decision-making process. Please see the resident's note for additional details.

Aaron Mohanty
Neurosurgery

# Progress Notes

Carlton, Adam, MD (RESIDENT) • • NS-NEUROLOGICAL SURGERY

**TDC Neurosurgery Clinic Note**
**12/9/2020**

**HPI:**
Paul Alexander Wilson is a 54 year old male lost to follow up after 2018 eval due to potential parole. He has severe cervical stenosis with BL grip dysfunction and gait instability which he feels has gotten worse over time. He has neck pain radiating into BL hands, unclear of exact dermatome as it involves entirety of both hands. He also had an event where he was landed on by someone three months ago and has since has LBP with BLE radicular pain/numbness down posterior legs into the feet. Denies any saddle anesthesia or bowel/bladder dysfunction.

**History:**
No past medical history on file.
**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • KNEE ARTHROSCOPY<br>*Surgeon: Carmichael, Kelly D, MD; Location: JOHN SEALY OR LOCATION* | Left | 6/19/2014 |
| • MENISCECTOMY<br>*Surgeon: Carmichael, Kelly D, MD; Location: JOHN SEALY OR LOCATION* | Left | 6/19/2014 |

**Medications:**
No current outpatient medications on file prior to visit.

No current facility-administered medications on file prior to visit.

**Physical Exam:**
Awake, alert, oriented x4
Face symmetric
UPPER EXTREMITY STRENGTH EXAM:

| | | | | | |
|---|---|---|---|---|---|
| R | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |
| | D(C5) | B(C6) | T(C7) | Grip(C8) | I (T1) |
| L | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |

LOWER EXTREMITY STRENGTH EXAM:

| | | | | | |
|---|---|---|---|---|---|
| R | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |
| | IP(L2) | Q(L3) | TA(L4) | EHL(L5) | G(S1) |
| L | 5/5 | 5/5 | 5/5 | 5/5 | 5/5 |

DSLT BUE
Exam deep tendon: 2+ patellar BL
No clonus
No Hoffman's

**Imaging:**
**2018 MRI C spine:**
Multilevel degenerative changes superimposed upon a congenitally narrowed
Spinal canal result in moderate spinal canal stenosis with cord impingement and
Chronic myelomalacia at the level of C4-C5

Moderate and severe bilateral neural foraminal narrowing are also noted at
C4-C5 and C5-C6, more pronounced on the left

**Assessment/Plan:**
Paul Alexander Wilson is a 54 year old male with known cervical stenosis C4-7 worst at C4/5 on imaging in 2018, subjectively myelopathic, symptoms worsening. Also with several months of BL L5/S1 radicular pain/numbness after someone landing on.

L spine flex/ex
MRI C/L spine w/o
Reasonable to have no back cuff pass given degree of cervical spine disease

**Follow Up:**
Holdover for MRI, surgical plan pending, page 99713 once completed.

Adam Carlton, MD
Neurosurgery

# Results

MR CERVICAL SPINE WO CONTRAST (Order 197573855)

## PACS Images

View PACS Image

## Study Result

EXAM: MR CERVICAL SPINE WO CONTRAST

HISTORY: Presurgical eval, C-spine Radiculopathy

TECHNIQUE: MRI of cervical spine was performed on 3 Tesla without intravenous contrast.

COMPARISON: Cervical spine MRI dated 5/2/2018.

FINDINGS:

The vertebral bodies are normal in height and alignment.

Modic type I endplate degenerative changes are noted at lower endplate of C4 vertebral body and Modic type II endplate degenerative changes at C5-C6. The background bone marrow signal is otherwise unremarkable.

Volume loss of the cervical cord and T2/STIR hyperintense signal is noted at C4-C5 likely represents myelomalacia sequela of chronic compressive myelopathy, unchanged from the scan dated 2018.

PW - Disc desiccation is noted throughout the entire cervical spine. *

At C2-C3, mild diffuse disc bulge. No high-grade spinal canal stenosis or significant neural foraminal narrowing.

At C3-C4, posterior disc osteophyte complex with uncovertebral and facet arthrosis result in severe left and moderate right neural foraminal narrowing, and mild spinal canal stenosis.

At C4-C5, posterior disc osteophyte complex with uncovertebral and facet arthrosis result in severe bilateral neural foraminal narrowing and moderate spinal canal stenosis.

At C5-C6, posterior disc osteophyte complex with uncovertebral arthrosis result in moderate to severe bilateral neural foraminal narrowing and mild spinal canal stenosis.

At C6-C7, posterior disc osteophyte complex with uncovertebral arthrosis result in moderate to severe left and moderate right neural foraminal narrowing and moderate spinal canal stenosis.

At C7-T1, no high-grade spinal canal stenosis or significant neural

foraminal narrowing.

The prevertebral soft tissues are unremarkable.

IMPRESSION

Multilevel spondylosis and spondyloarthropathy result in up to moderate spinal canal stenosis at C4-C5 and C6-C7, mild at C3-C4 and C5-C6.

Multilevel moderate to severe bilateral neural foraminal narrowing noted at C3-C7.

Myelomalacia is noted at C4-C5 likely represents sequela of chronic compressive myelopathy, unchanged from the cervical spine dated 2018.

## Imaging

MR CERVICAL SPINE WO CONTRAST (Order: 197573855) - 12/11/2020

## Result History

MR CERVICAL SPINE WO CONTRAST (Order #197573855) on 12/13/2020 - Order Result History Report

## Signed

Electronically signed by Al Jadiry, Huda Abdul Munaf Husain, MD on 12/13/20 at 1228 CST

## Exam Information

| Status | Exam Begun | Exam Ended | Technologist |
|---|---|---|---|
| Final [99] | 12/13/2020 11:20 | 12/13/2020 12:07 | MGTHUNDI |

## External Results Report

Open External Results Report

## Encounter

View Encounter

## MR CERVICAL SPINE WO CONTRAST (Accession R1072581) (Order 197573855)

### Image Documentation: Technologist

No findings

## Order Report

MR CERVICAL SPINE WO CONTRAST (Order #197573855) on 12/11/20

## Electronically Signed By

Carlton, Adam, MD

Show result comparison

# Results History

MR CERVICAL SPINE WO CONTRAST (Order 197573855)

## 12/13/2020 12:29 PM - Utmb, Radiant Results Inft User

### Narrative & Impression

EXAM: MR CERVICAL SPINE WO CONTRAST

HISTORY: Presurgical eval, C-spine Radiculopathy

TECHNIQUE: MRI of cervical spine was performed on 3 Tesla without intravenous contrast.

COMPARISON: Cervical spine MRI dated 5/2/2018.

FINDINGS:

The vertebral bodies are normal in height and alignment.

Modic type I endplate degenerative changes are noted at lower endplate of C4 vertebral body and Modic type II endplate degenerative changes at C5-C6. The background bone marrow signal is otherwise unremarkable.

Volume loss of the cervical cord and T2/STIR hyperintense signal is noted at C4-C5 likely represents myelomalacia sequela of chronic compressive myelopathy, unchanged from the scan dated 2018.

Disc desiccation is noted throughout the entire cervical spine.

At C2-C3, mild diffuse disc bulge. No high-grade spinal canal stenosis or significant neural foraminal narrowing.

At C3-C4, posterior disc osteophyte complex with uncovertebral and facet arthrosis result in severe left and moderate right neural foraminal narrowing, and mild spinal canal stenosis.

At C4-C5, posterior disc osteophyte complex with uncovertebral and facet arthrosis result in severe bilateral neural foraminal narrowing and moderate spinal canal stenosis.

At C5-C6, posterior disc osteophyte complex with uncovertebral arthrosis result in moderate to severe bilateral neural foraminal narrowing and mild spinal canal stenosis.

At C6-C7, posterior disc osteophyte complex with uncovertebral arthrosis result in moderate to severe left and moderate right neural foraminal narrowing and moderate spinal canal stenosis.

At C7-T1, no high-grade spinal canal stenosis or significant neural foraminal narrowing.

The prevertebral soft tissues are unremarkable.

IMPRESSION

Multilevel spondylosis and spondyloarthropathy result in up to moderate spinal canal stenosis at C4-C5 and C6-C7, mild at C3-C4 and C5-C6.

Multilevel moderate to severe bilateral neural foraminal narrowing noted at C3-C7.

Myelomalacia is noted at C4-C5 likely represents sequela of chronic compressive myelopathy, unchanged from the cervical spine dated 2018.

## 12/13/2020 11:36 AM - Thundiyath, Matthew G, RT

**Result not yet available**

Exam Ended

Imported From UTMB - Galveston Lab System

Patient Name : WILSON, PAUL A
Patient Id : 1739074
Patient Phone :
Date of Birth : 10/04/1966
SS# : -- Sex : Male

Ordering
Physician : RUPESH, PRIYA (1104472273)
Facility : HUGHES (AH)
FM 929
GATESVILLE TX 76597

| Test Name | Result | ABN Flag | Unit | Reference Range | LAB ID |
|---|---|---|---|---|---|

Accession: R1075991 Requisition: 197752661
Imaged:12/14/20 22:32 Reported: 12/14/20 23:47

Procedure: CT STROKE ANGIOGRAM NECK
Rad: please obtain POCT creatinine prior to CTA head/neck

NARRATIVE
CT STROKE HEAD WO CONTRAST,
CT STROKE ANGIOGRAM HEAD,
CT STROKE ANGIOGRAM NECK

HISTORY: Stroke suspected, focal neuro deficit, < 6 hrs

COMPARISON: MRI brain 6/12/2018

TECHNIQUE: Helical CT scan of the head was performed without intravenous contrast. Multiplanar reconstructions were then generated. Following noncontrast CT had a helical CT angiogram of the head and neck was performed after the uncomplicated administration of 100 mL of IV Omnipaque contrast solution. Coronal and sagittal MIPS reconstructions were then generated.

CT HEAD FINDINGS:

Hyperattenuating fluid collection within the left parietal scalp may represent an acute to subacute scalp hematoma. No underlying calvarial defect.

The ventricles and cerebral sulci are normal in caliber and configuration. No hydrocephalus, midline shift or pathological extra-axial fluid collection is present. The basal cisterns are unremarkable.

There is no acute intracranial hemorrhage or significant mass effect. The gray-white matter differentiation is preserved.

The paranasal air sinuses are clear. The calvarium and central skull base are unremarkable. Underpneumatized mastoids.

CT ANGIOGRAM HEAD FINDINGS:

The PICA origin is visualized bilaterally. The basilar artery is normal in caliber. The superior cerebellar arteries are unremarkable. Mild right P2 segment narrowing.

The distal cervical, petrous, cavernous and supraclinoid internal carotid arteries are unremarkable. The middle cerebral arteries are unremarkable.

Imported From UTMB - Galveston Lab System

Patient Name : WILSON, PAUL A
Patient Id : 1739074
Patient Phone :
Date of Birth : 10/04/1966
SS# : -- Sex : Male

Ordering
Physician : RUPESH, PRIYA (1104472273)
Facility : HUGHES (AH)
FM 929
GATESVILLE TX 76597

| Test Name | Result | ABN Flag | Unit | Reference Range | LAB ID |
|---|---|---|---|---|---|

visualized.

CT ANGIOGRAM NECK FINDINGS:

Aortic arch and arch vessel origins: Standard trivessel aortic arch anatomy. Mild noncalcified atherosclerosis of the aortic arch.

Innominate and subclavian arteries: Venous contrast obscured portion of the left subclavian artery.

Common carotids: Widely patent and without significant stenosis.

Vertebral arteries: Widely patent and without significant stenosis. Mild atherosclerosis at the origin of the right vertebral artery.

Cervical spine: Degenerative changes.

IMPRESSION

IMPRESSION:

No acute intracranial abnormality. Left parietal scalp hematoma. No underlying calvarial defect.

No intracranial proximal large vessel occlusion.

No significant extracranial stenosis.

Preliminary Report Dictated by Resident: Ndy C Ikwuagwu

I, Kuang-Chun Hsieh, MD., have reviewed this study and agree with the above report.

Interpreted by: HSIEH, KUANG-CHUN NPI: 1700011053



Labs ordered by UTMB Hospital Galveston provider with implied review in UTMB HG medical records. Electronic signature not required.

Imported From UTMB - Galveston Lab System

Patient Name : WILSON, PAUL A
Patient Id : 1739074
Patient Phone :
Date of Birth : 10/04/1966
SS# : -- Sex : Male

Ordering
Physician : LALL, RISHI (1235491291)
Facility : HUGHES (AH)
FM 929
GATESVILLE TX 76597

| Test Name | Result | ABN Flag | Unit | Reference Range | LAB ID |
|---|---|---|---|---|---|

Accession: R1072582 Requisition: 197573883
Imaged:12/13/20 12:22 Reported: 12/13/20 12:33

Procedure: MR LUMBAR SPINE WO CONTRAST

NARRATIVE
EXAM: MR LUMBAR SPINE WO CONTRAST

HISTORY: L/S-spine stenosis Radiculopathy, > 6wks conservative tx, persistent sx

TECHNIQUE: MRI of lumbar spine was performed on 3 Tesla without intravenous contrast.

COMPARISON: Lumbar spine radiograph dated 12/9/2020.

FINDINGS:

The vertebral bodies are normal in height and alignment.

Bone marrow edema is noted at L4 and L5 pedicles and articular facets bilaterally. The background bone marrow signal is otherwise unremarkable.

Lumbar discs are normal in height and signal intensity.

The conus medullaris terminates at L1 and is normal. Cauda equina nerve roots are unremarkable.

Facet arthrosis is noted at L2-S1 without causing high-grade spinal canal stenosis or significant neural foraminal narrowing. Prominent epidural fat at L5-S1 results in mild effacement of the thecal sac.

The paraspinal soft tissues are unremarkable.

IMPRESSION
IMPRESSION:

Bone marrow edema is noted at the L4-L5 pedicles and facet joints bilaterally likely reactive due to altered biomechanics.

No high-grade spinal canal stenosis or significant neural foraminal narrowing at any level.

Mild epidural lipomatosis at L5-S1 results in mild effacement of the thecal sac.

Imported From UTMB - Galveston Lab System

Patient Name : WILSON, PAUL A
Patient Id : 1739074
Patient Phone :
Date of Birth : 10/04/1966
SS# : -- Sex : Male

Ordering
Physician : LALL, RISHI (1235491291)
Facility : HUGHES (AH)
FM 929
GATESVILLE TX 76597

| Test Name | Result | ABN Flag | Unit | Reference Range | LAB ID |
|---|---|---|---|---|---|

Interpreted by: AL JADIRY, HUDA A. NPI: 1144677154


Labs ordered by UTMB Hospital Galveston provider with implied review in UTMB HG medical records. Electronic signature not required.

# Texas Department of Criminal Justice

8J-43B

# STEP 1 OFFENDER GRIEVANCE FORM

ACCEPT AS ORIGINAL

**OFFICE USE ONLY**

Grievance #: 2021022533

Date Received: OCT 22 2020

Date Due: 12/1 11/16

Grievance Code: 930 1648

Investigator ID #: I2235

Extension Date: ______

Date Retd to Offender: OCT 30 2020

**Offender Name:** Paul Wilson **TDCJ #** 1739074

**Unit:** Hughes **Housing Assignment:** 8-3-43-B

**Unit where incident occurred:** Alfred Hughes

**You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.**

Who did you talk to (name, title)? NUMEROUS MEDICAL STAFF When? NUMEROUS DATES

What was their response? ITS UP TO SECURITY ON HOW THEY WANT TOO HANDCUFF YOU. CHECK WITH THE WARDEN

What action was taken? STAFF ASSAULT AND HARRASSMENT BY MEDICAL PERSONEL

**State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate**

MEDICAL GRIEVANCE:

I HAVE MADE CONTINUOUS ATTEMPTS TO GET HANDCUFFED PROPERLY (WITH A RESTRAINT STRAP) OR TOO GET A FRONT CUFF PASS. THIS IS A MEDICAL ISSUE/MATTER. ON NUMEROUS OTHER UNITS, THE MEDICAL DEPARTMENT HAS ISSUED RESTRAINT PASSES TO PATIENTS THAT HAVE DIAGNOSIS OF AN INJURY OR INJURIES THAT PREVENT THE OFFENDER(S) FROM WEARING CERTAIN RESTRAINTS, CERTAIN WAYS. ON THE DATE OF MAY 3, 2018, A SPECIALIST AT JOHN SEALY (GALVESTON - UTMB/CMC), DID MRIS ON MY NECK AND SPINAL CANAL. AND IN HIS FINDINGS, THE DOCTOR FOUND DIFFUSE DISC AND OTHER DAMAGE ~~THAT~~ WAS DONE TOO MY SPINAL CORD (HEYMANN, JOHN CLARE JR. MD). AND EVEN ORDERED TO DO SURGERY. (BEFORE THE PANDEMIC). I AM SCHEDUALED TO SEE THE SPECIALIST AGAIN)

SINCE I HAVE ARRIVED ON THE ALFRED HUGHES UNIT, I HAVE BEEN CONTINUELY DENIED A FRONT RESTRAINT PASS. AND OFFICERS CONTINUE TOO BULLY ME BY DENYING ME TRIPS TO THE INSULIN DEPARTMENT, SHOWERS, MEDICAL DEPARTMENT DENTAL. AND HAVE EVEN FALLEN TO ASSUALTING ME. ON THE DATE OF SEPTEMBER 14TH, 2020, DEADLY FORCE WAS USED RIGHT INSIDE OF THE MEDICAL DEPARTMENT. PLEASE SEE - USE OF FORCE CAMERA ON SEPTEMBER 14, 2020 AT 3:33 PM. THIS CONTINUOUS DENIAL OF BEING PROPERLY RESTRAINED (RESTRAINT STRAP), OR BEING ISSUED A FRONT CUFF PASS IS CLEARLY AN ACT OF DELIBERATE INDIFFERENCE ON THE MEDICAL DEPARTMENT'S PART. AND THE SECURITY STAFF ARE TAKING ADVANTAGE OF THE OPPERTUNITY, BY PROVOKING USE OF FORCES AND THEN LYING TO, TOO COVER UP THE DAMAGE THAT THEY ARE DOING. I HAVE SUSTAINED ANOTHER BACK INJURY. IT WAS DO TO AN OFFICER CRASHING HIS KNEE INTO MY SPINE AS PUNISHMENT. THE OFFICER WEIGH 400 POUNDS (MARRERO). AND IT CONTINUES TO BE A STRUGGLE WITH THIS SERIOUS

ISSUE (S). RETALIATION CONTINUES TO BE APPLIED BY STAFF MEMBERS THAT I REPORTED. THEY WERE NOT ADHEARING TOO THE CORONAVIRUS PROTOCOL. AND WERE/ STILL ARE HANGING OUT IN THE MEDICAL DEPARTMENT (WHERE SECURITY CAMERAS HAVE BEEN REMOVED). MOST OF THE ASSAULTS TAKE PLACE IN THESE UN-CAMERATED PLACES I HAVE REQUESTED AN INVESTIGATION INTO THIS MATTER (VIA - OTHER LITIGATION). IT HAS ALWAYS BEEN MEDICAL'S CALL ON MATTERS OF RESTRAINTS ON THE INJURED OFFENDER (S), WHO IS NOT PHYSICALLY CAPABLE OF CERTAIN FUNCTIONS OF THE INJURE BODY PARTS. YET THE HUGHES UNIT'S MEDICAL DEPARTMENT HAS ABANDONED THIS POLICY / DUTY. AND CREATED THEIR OWN (CUSTOM/POLICY). AND COVID-19 PROTOCOL SHOULD NOT BE TAKEN SO LIGHTLY YET I AM ALSO BEING PUNISHED FOR REPORTING IT.

A[illegible]n Requested to resolve your Complaint. THAT THE OFFENDER BE ISSUE A FRONT CUFF PASS AND THAT THE APPROPRIATE ACTION BE TAKEN. AND THAT UTMB/CMC BE CONTACTED ABOUT THIS

Of[illegible]nder Signature: Paul Wilson Date: 10-22-20

**Grievance Response:**

Un-Substantiated: You were not scheduled for surgery on your back. You saw Neurology at HG on 8/9/2018 and were referred to see Neurosurgery and referred to the pain clinic. You signed a refusal for your Neurosurgery appointment on 11/20/18. You signed a refusal for your Pain Clinic appointment on 2/28/19. You saw the provider on 9/22/20. He referred you to HG Neurosurgery on that date. The referral has not been reviewed yet. Per policy regarding the front cuff pass you asked for, "With respect to forensic restraints, health care providers should communicate limitations with restraining offenders rather than directing security how to restrain an offender."

**Signature Authority:** Teri Smith T. SMITH RN CNM **Date:** OCT 2 7 2020

**I[illegible] are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. S[illegible] the reason for appeal on the Step 2 Form.**

**[illegible]rned because: *Resubmit this form when the corrections are made.**

- Grievable time period has expired.
- Submission in excess of 1 every 7 days. *
- Originals not submitted. *
- Inappropriate/Excessive attachments. *
- No documented attempt at informal resolution. *
- No requested relief is stated. *
- Malicious use of vulgar, indecent, or physically threatening language. *
- The issue presented is not grievable.
- Redundant, Refer to grievance #______
- Illegible/Incomprehensible. *
- Inappropriate. *

**Printed Name/Signature:** ______

**[illegible]ication of the screening criteria for this grievance is not expected to adversely [illegible]t the offender's health.**

**[illegible]ical Signature Authority:** ______

**OFFICE USE ONLY**

**Initial Submission** UGI Initials: ____
Grievance #: ____
Screening Criteria Used: ____
Date Recd from Offender: ____
Date Returned to Offender: ____

**2nd Submission** UGI Initials: ____
Grievance #: ____
Screening Criteria Used: ____
Date Recd from Offender: ____
Date Returned to Offender: ____

**3rd Submission** UGI Initials: ____
Grievance #: ____
Screening Criteria Used: ____
Date Recd from Offender: ____
Date Returned to Offender: ____

8K-13B

ACCEPT AS ORIGINAL

DEC 28 2020

**Texas Department of Criminal Justice**

# STEP 2 OFFENDER GRIEVANCE FORM

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2021022533 |
| UGI Recd Date: | NOV 1 6 2020 |
| HQ Recd Date: | 11-16-20 |
| Date Due: | 12-1-20 |
| Grievance Code: | 930/648 |
| Investigator ID#: | 0352 |
| Extension Date: | |

Offender Name: PAUL WILSON TDCJ # 1729074

Unit: HUGHES Housing Assignment: 8-J-43-B

Unit where incident occurred: HUGHES UNIT

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

**Give reason for appeal (Be Specific).** *I am dissatisfied with the response at Step 1 because...* STEP ONE NEGLECTED to RESOLVE THE ISSUE(S). I UNDERSTAND THAT I did SEE NEUROLOGY At HG ON 8-9-2018 AND THAT I WAS REFERRED to SEE NEURO-SURGERY AND REFERRED to THE PAIN CLINIC, (THE PAIN CLINIC INFORMATION IS NEW too ME). ON 2-26-19, I WAS told THAT THIS WAS NEUROSURGERY AGAIN, NOT THE PAIN CLINIC. I WAS SCHEDULED to SEE NEUROSURGE to talk about THE PROCEEDURE THEY WOULD BE DOING IN THE OPPERATION ROOM. AND to THE BEST OF MY KNOWLEDGE, SEEING THE NEUROSURGON too talk about PRO-CEEDURES. AND BEING SCHEDULED FOR SURGERY IS ALL A PART OF THE SAME PROCESS. I AGREE WITH THE INFORMATION PROVIDED THAT, I WAS SEEN BY THE UNIT PROVIDER ON 09-22-2020. I ALSO AGREE that HE REFERRED ME to HG NEUROSURGERY ON THE SAME DATE. I WOULD LIKE to ADD THAT THIS IS A NEW INJURY. THIS INJURY OCCU-RRED ON THE DATE OF SEPT. 14, 2020. ON THIS DATE, A GROUP OF SECURITY OFFICERS ALMOST TOOK MY LIFE, WITH A NECK CONTROLLED TAKE DOWN WHILE I WAS PAINFULLY HANDCUFFED BEHIND MY BACK. I WAS TAKEN OUT OF THE SIGHT OF SECURITY CAMERAS INTO A AD-SEGRAGATION OFFICE, AND PHYSICALLY ASSAULTED. I WAS TREATED SO BADLY BECAUSE I'VE BEEN LABLED A WISE GUY BECAUSE OF MY PHYSICAL SHORT COMMINGS. AND I AM CONSTANTLY TAUNTED WITH THE WORDS FAKER. AND A GUY WHO REFUSES to BE HANDCUFFED IN THE BACK POSITION. BUT THE TRUTH IS, I HAVE A SPINAL INJURY THAT BEEN DIAGNOSED BY HG. MY MRIs WERE DONE AT HG. YET THESE FINDINGS ARE NOT BEING HONORED OR RESPECTED HERE AT THE HUGHES UNIT. NOT BY SECURITY OR THE MEDICAL STAFF. AND COMMUNICATION LIMITATIONS WITH RESTRAINING THE OFFENDER, HAS NOT TAKEN PLACE. ON THE DATE OF NOVEMBER 5th, 6, AND 7th, I WAS DENIED THREE

trips in a row. An officer Ray denied me access to the insulin triage, and even though racism played a huge part; his excuse was that I refused to be cuffed behind my back. I've also been constantly denied showers

Offender Signature: Paul Wilson Date: 11-15-20

Grievance Response:

A review of the Step 1 medical grievance has been completed regarding your request for a front cuff pass and security denying you to go to receive insulin, showers, and medical visits. You also complained of a use of force (UOF) on 9/14/2020 at 3:33 PM. You have requested a front cuff pass and appropriate action taken for the above situations.

An appellate review of the medical grievance and clinical record indicates the response at Step 1 was appropriate. Additionally, nursing saw you on 9/14/2020 and documentation shows there were ``no adverse health effects`` from the UOF. The provider saw you on 9/22/2020 but no further restrictions or passes were ordered. In accordance with Correctional Managed Health Care (CMHC) Policy A-08.4 the medical director has the final authority over medical restrictions; therefore, if you wish to have further evaluation for such restrictions you are advised to submit a Sick Call Request asking to be evaluated by the medical director. Responses to later Sick Call Requests concerning a front cuff pass were not considered urgent and were deferred due to the COVID-19 pandemic since the issue had been previously evaluated on 9/22/2020. The referral to Neurosurgery was approved but no appointment date has been given. The issues with security denying you to go different places and the issue of assaults by security are not under the purview of health services. You may submit an I-60 to security/warden concerning these issues.

While you have the right to refuse medical treatment, such as your insulin, in accordance with CMHC Policy I-71.1, such refusals can limit the providers` ability to treat you for your medical complaint and may affect your overall health.

STEP II MEDICAL GRIEVANCE PROGRAM

Signature Authority: ____________ Date: 11-30-20

TDCJ HEALTH SERVICES DIVISION

Returned because: *Resubmit this form when corrections are made.*

- ☐ 1. Grievable time period has expired.
- ☐ 2. Illegible/Incomprehensible.*
- ☐ 3. Originals not submitted. *
- ☐ 4. Inappropriate/Excessive attachments.*
- ☐ 5. Malicious use of vulgar, indecent, or physically threatening language.
- ☐ 6. Inappropriate.*

CGO Staff Signature: ____________

**OFFICE USE ONLY**

**Initial Submission** CGO Initials: ____

Date UGI Recd: ____

Date CGO Recd: ____

(check one) ___Screened ___Improperly Submitted

Comments: ____

Date Returned to Offender: ____

**2nd Submission** CGO Initials: ____

Date UGI Recd: ____

Date CGO Recd: ____

(check one) ___Screened ___Improperly Submitted

Comments: ____

Date Returned to Offender: ____

**3rd Submission** CGO Initials: ____

Date UGI Recd: ____

Date CGO Recd: ____

(check one) ___Screened ___Improperly Submitted

Comments: ____

Date Returned to Offender: ____

**Texas Department of Criminal Justice**

# STEP 1 OFFENDER GRIEVANCE FORM

ACCEPT AS ORIGINAL

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2021009850 |
| Date Received: | SEP 23 2020 |
| Date Due: | 10/8 |
| Grievance Code: | 930/800 |
| Investigator ID #: | 12691 |
| Extension Date: | OCT 06 2020 |
| Date Retd to Offender: | |

Offender Name: PAUL WILSON TDCJ # 1739074

Unit: ALFRED HUGHES Housing Assignment: 8-J-43-B

Unit where incident occurred: ALFRED HUGHES

**You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.**

Who did you talk to (name, title)? INVESTIGATING OFFICIAL, Sgt. ALBERT When? 09-14-20

What was their response? THAT I ALLEGEDLY HIT Lt. RANSTER WITH A WALKING CANE. AND ALLEGEDLY ASSAULTED MARRE

What action was taken? DISCIPLINARY CASE WAS WRITTEN BY OFFICER MARRERO, CASE # 20210011075

**State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate**

ON THE DATE OF SEPTEMBER 14, 2020, AND AT 3:33 PM, AT 8 BLDG ADMINISTRATIVE OFFICE, Lt RANSTER DEWAYNE, ORDER AN ESCORT OFFICER AND ME TO ENTER THE ADMINISTRATION OFFICE. AS THE OFFICER AND I STOOD NEAR THE ENTRANCE, Lt. RANSTER ASKED THE ESCORT OFFICER, WHY IN THE FXXK DO YOU HAVE THAT LITTLE SNITCHING BXXXH HANDCUFFED TO THE FRONT? MY ESCORT ANSWERED BY POINTING DOWN AT THE WALKING CANE THAT WAS IN MY HANDS, THEN SAID, THE OFFENDER HAS PAPERS SHOWING THAT HE HAS A SPINAL INJURY ALSO. Lt. RANSTER'S REPLY WAS THAT, THAT SNITCH AZZ BXXXH AINT GOT ONE TODAY! TAKE THAT CANE AWAY FROM HIS AZZ, THEN CUFF HIS AZZ IN THE BACK POSITION. THE ESCORT OFFICER PULLED OUT A HANDCUFF KEY. AND HE SAID THAT HE WOULD DO IT, RIGHT WHERE WE WERE STANDING. BUT Lt. RANSTER INSISTED THAT THE OFFICER BRING ME INSIDE THE OFFICE. AS WE ENTERED THE OFFICE, Sgt. SIMONS, SAMANTHA, AND Sgt. DELAND, JOSHUA WERE ALREADY LAUGHING WITH AMUSEMENT. Lt. RANSTER JUMPED UP FROM HIS CHAIR, GRABBED MY CANE, AND THEN SNATCHED IT AWAY FROM MY HANDS, THEN THREW IT INTO A CORNER INSIDE THE OFFICE. AT THIS TIME Sgt DELAND AND Sgt. SIMONS, JOINED FORCES IN A COMBINED EFFORT TO HELP Lt. RANSTER WITH PULLING MY HANDS BEHIND MY BACK. WHEN I SCREAMED OUT IN EXCRUCIATING PAIN, Lt. RANSTER LEANED INTO MY FACE AND THEN ASKED, HOW DOES THAT FEEL MY NIGG I ANSWER Lt. RANSTER'S QUESTION WITH, YOU ARE HURTING MY SPINE! WHEN I ASKED Lt. RANSTER WHAT THE DEAL WAS?, Sgt. DELAND, JOSHUA, WAS THE FIRST TOO ANSWER MY QUESTION WITH, THE WARDEN SAID FOR US TO TAKE ALL YOU GERIATRIC AZZ NIGGAS CANE AND WALKERS FROM YALL BXXXH AZZEZ. WHEN I (OFFENDER, PAUL WILSON), ASKED Sgt DELAND WHICH WARDEN HAD ORDERED SUCH A THING? Sgt. DELAND ASWERED WITH, THE BLACK WARDEN MY NIGGA! Sgt. SIMONS ECHOED, YEAH THE BLACK WARDEN MY NIGGA!! AT THIS TIME, ANOTHER OFFICER WALKED IN (Sgt. BIRDOW, ELDRICK. I ASKED Sgt. BIRDOW ABOUT GETING A USE OF FORCE CAMERA (BASICALLY ASKING FOR HELP), BUT OFFICER, Sgt BIRDOW ANSWERED, THAT HE DID NOT HAVE NOTHING

to do With [illegible] out of the office. It was while Sgt. Deland was [illegible] that I informed Him that I was going to let the Black Warden Know about His comments. Sgt. Deland put His Hand around my neck and started choking me. Lt. Ranster yelled out, Man, whatch out for the camera? Cause that snitching azz nigga is still standing in the front of the office. Sgt. Deland immediately let go; but made me a promise that he would get me later, and that I could count on it. Officer Marrero showed up, and Lt. Ranster told Him that I was the snitching azz nigga that made complaints and reported that Officer [illegible], James, Co. III. Had been picking up trash, doing escorts, and feeding chow, with the same pair of rubber gloves? On September 3rd, 2020, Officer Hall, had put His gloved Hand on my shoulder and shirt

(Continue on additional pages.)

**Action Requested to resolve your Complaint.** That the appropriate action be taken

**Offender Signature:** [signature] **Date:** 09-23-20

**Grievance Response:**

**Your grievance has been reviewed and investigated. Per policy only one issue from this grievance will be addressed. The unit initiated an investigation due to the nature of your allegation made. Staff denied the allegations. There was no evidence found to support your allegation that staff used excessive force on you. However, this was forwarded to the Office of Inspector General for further reviewed but declined to open a case due to insufficient evidence. Based on available facts, no further action warranted.**

**Signature Authority:** [signature] **Date:** 10-05-2020

**If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.**

**Returned because:** ***Resubmit this form when the corrections are made.**

- ☐ 1. Grievable time period has expired.
- ☐ 2. Submission in excess of 1 every 7 days. *
- ☐ 3. Originals not submitted. *
- ☐ 4. Inappropriate/Excessive attachments. *
- ☐ 5. No documented attempt at informal resolution. *
- ☐ 6. No requested relief is stated. *
- ☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
- ☐ 8. The issue presented is not grievable.
- ☐ 9. Redundant, Refer to grievance #________
- ☐ 10. Illegible/Incomprehensible. *
- ☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** ________

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** ________

**OFFICE USE ONLY**

**Initial Submission** **UGI Initials:** ____
**Grievance #:** ____
**Screening Criteria Used:** ____
**Date Recd from Offender:** ____
**Date Returned to Offender:** ____
**2nd Submission** **UGI Initials:** ____
**Grievance #:** ____
**Screening Criteria Used:** ____
**Date Recd from Offender:** ____
**Date Returned to Offender:** ____
**3rd Submission** **UGI Initials:** ____
**Grievance #:** ____
**Screening Criteria Used:** ____
**Date Recd from Offender:** ____
**Date Returned to Offender:** ____

8J-43B

ACCEPT AS ORIGINAL

Texas Department of Criminal Justice

# STEP 2 OFFENDER GRIEVANCE FORM

OFFICE USE ONLY
Grievance #: 2021009850
UGI Recd Date: 10-22-2020
HQ Recd Date: RECEIVED OCT 22 2020
Date Due: 11-6-2020
Grievance Code: 930 (800)
Investigator ID#: 09164
Extension Date:

Offender Name: Paul Wilson TDCJ # 1739074
Unit: Alfred Hughes Housing Assignment: 8-J-43-B
Unit where incident occurred: Alfred Hughes

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

**Give reason for appeal (Be Specific).** *I am dissatisfied with the response at Step 1 because...* It needed to Resolve the issue. The step one grievance stated that there was an investigation done, and that staff denied the allegations. This could not possiblely be a impartial finding. The incident was recorded on the UOF-Camera (Sept. 14, 2020 at 3:33 pm) and unit security cameras were in working order on this same date. My life was almost taken by these officers. There were more than enough witnesses and by standers. I did not claim that excessive force was used. My hands were cuffed behind my back when officer Marrero viciously attacked me from behind. Not only did he almost break my neck, he also injured my back, which is still a painful issue. I am still waiting to see a specialist. And I am currently on pain meds. The officers continue to show up at my cell door with handcuffs, telling me that they have to cuff me behind my back. Which I am not physically capable of. I have had numerous front cuff passes on other units in the TDCJ-ID. And do to retaliation, I have been in G5 coustody before. And was cuffed in the front with a "restraint-strap" - see UOF-Plan. There were numerous UOF plan violations that took place on September 14, 2020. These officers are running around the unit "provoking use of forces"? And doing it so much that Sgt Deland had a pocket full of UOF-2 forms stuffed inside his pocket. He reach into his pocket and pealed me one of the wade/stack I know of numerous offenders that have the same complaint un-necessary

ACCEPT AS ORIGINAL

83-4138

USE OF FORCE. AND BEATINGS WHILE BEING CUFFED BEHIND THE BACK. EVEN SINCE MY INCIDENT. THE OFFICERS THEN SPREAD FALSE ALLEGATIONS THAT HAS OTHER OFFIC APPROACHING YOU/ME AS A TROUBLE MAKER. AND I AM OFTEN ASKED, WHY did YOU HI Lt. RANSFER WITH A CANE OR WHY did YOU HIT OFFICER MARERO. THE DEFAMATIONS HAS, AND DOES CONTINUE TO MAKE PROBLEMS FOR ME. I HAVE REQUESTED A L.I.D NUMEROUS TIMES.

Offender Signature: Paul Wilson Date: 10-21-20

Grievance Response:

This issue has been reviewed by The Office of the Inspector General and that office has determined that there is insufficient evidence to warrant opening a case. No further action will be taken.

Signature Authority: [signature] Date: OCT 27 2020

Returned because: *Resubmit this form when corrections are made.*

☐ 1. Grievable time period has expired.

☐ ~~2. Illegible/Incomprehensible.*~~

☐ 3. Originals not submitted. *

☐ 4. Inappropriate/Excessive attachments.*

☐ 5. Malicious use of vulgar, indecent, or physically threatening language.

☐ 6. Inappropriate.*

CGO Staff Signature: ______

**OFFICE USE ONLY**

Initial Submission CGO Initials: ______

Date UGI Recd: ______

~~Date CGO Recd:~~ ______

(check one) ___Screened ___Improperly Submitted

Comments: ______

Date Returned to Offender: ______

2nd Submission CGO Initials: ______

Date UGI Recd: ______

Date CGO Recd: ______

(check one) ___Screened ___Improperly Submitted

Comments: ______

Date Returned to Offender: ______

3rd Submission CGO Initials: ______

Date UGI Recd: ______

Date CGO Recd: ______

(check one) ___Screened ___Improperly Submitted

Comments: ______

Date Returned to Offender: ______

# Texas Department of Criminal Justice

816-13B

# STEP 1 OFFENDER GRIEVANCE FORM

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2021042876 |
| Date Received: | 12-8-20 |
| Date Due: | 12-23-20 |
| Grievance Code: | 930(015) |
| Investigator ID #: | I2731 |
| Extension Date: | |
| Date Retd to Offender: | DEC 2 8 2020 |

Offender Name: Paul Wilson TDCJ # 1739074

Unit: Alfred Hughes Housing Assignment: 8-J-43-B

Unit where incident occurred: Alfred Hughes

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? NUMEROUS OFFICIALS When? NUMEROUS OCCASSIONS

What was their response? NO ACTION TAKEN

What action was taken? NO REPLY SENT

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

ON THE DATE OF DECEMBER 1, 2020, Lt. DEWAYNE RANSTER, WAS SITTING INSIDE THE ADMINISTRATIVE OFFICE. AND WAS SITTING AT A DESK THAT WAS FACING THE ENTRANCE DOOR, WHERE HE BRANDISHED A KNIFE, OR WHAT LOOKED TO BE A KNIFE, AND THEN THREATENED MY LIFE BY SAYING, THAT HE WAS GOING TO KILL ME WITH IT. WHILE HE SILENTLY MOUTHED THE WORDS, I AM GOING TO KILL YOU, HE MADE STABBING MOTIONS INTO THE AIR. ON THE FOLLOWING DAY (DECEMBER 2, 2020), Lt. RANSTER, OFFICER A. MARRERO, CO. IV, AND NURSE STEVIEE JACOBS (LVN), WERE SITTING INSIDE THE MEDICAL DEPARTMENT. AND BOTH OFFICERS AND THE NURSE, WERE NOT WEARING MASK. AS THE ESCORT OFFICER AND I, WERE ABOUT TO ENTER THE INFIRMARY, OFFICER MARRERO CAME RUNNING TO THE DOOR, AND OPENED THE DOOR FROM THE IN-SIDE OF THE INFIRMARY. AS THE OFFICER AND I PASSED BY HIM, OFFICER MARRERO, IN A LOW-TONE, SAID, HEY BXXXH, YOU STILL CRYING? NURSE JACOBS AND Lt. RANSTER WERE LAUGHING HYSTERICALLY. ONCE THE OFFICER AND I WERE COMPLETELY INSIDE THE MEDICAL DEPARTMENT, Lt. RANSTER AND NURSE JACOBS WERE SITTING INTIMATELY TOGETHER. THEY HAD THEIR CHAIRS PULLED TOGETHER IN ALMOST A LOVE-SEAT FASHION. AND WAS WHISPERING BACK AND FORTH, AS THEY HAZED DIRECTLY AT ME. Lt. RANSTER WAS LAUGHING SO HARD THAT HE HAD TO COVER HIS MOUTH WITH THE RECEIVER OF A PHONE THAT HE GRABBED FROM A NEAR BY TABLE. OFFICER MARRERO WAS SITTING ON A DESK-TOP THAT IS POSITIONED RIGHT IN THE MIDDLE OF THE MEDICAL DEPARTMENT. THE OFFICERS WERE BEING SO BOISTEROUS, THAT THE OTHER OFFICER THAT HAD NOW ENTERED THE INFIRMARY SAID, MAN THEM FOOLS AIN'T GONNA HAVE NO GOOD LUCK BEATING UP ON OLD PEOPLE LIKE YOU OLD SCHOOL. THAT FOOL RANSTER IS RUNNING AROUND BRAGGING ABOUT HOW HIM SGT. SIMONS, SGT DELAND, AND MARRERO GOT A CHANCE TO SLAM YOU TWICE IN ONE DAY. AND BEAT THE FXXX OUT OF YOU WHILE YOU WERE HANDCUFFED. SINCE THE INCIDENT ON NUMEROUS OCCASSIONS, Lt RANSTER HAS COME RUNNING OUT OF THE AD-OFFICE SO HE CAN KEEP HARASSING ME, BY HAZING, YELLING THREATS AND DEMANDS, OR DEMANDING THAT OTHER OFFICERS THREAT ME BADLY. Lt. RANSTER CAME RUNNING INTO THE MED.

DEPARTMENT AND told the ESCORT OFFICER that HE Should Hold ON to ME A little tighter because Aint NO telling WHEN ONE OF these INMATES gonna Come in HERE AND try to grab ONE OF these NURSES. And the Lt RANSFER started glazing at me. His statement shocked the two NURSES that WERE PRESENT. ONE NURSE EVEN VOICED HER OPINION, by saying that WE NURSES DEAL With these SAME INMATES EVERDAY. AND I dont Find ANY ONE OF them dangerous, Especially Mr. Wilson. Lt RANSFER turned AROUND AND LEFT. But HE Continues His tirade OF HARASSMENT AND RETALIATION. AND His ACTS HAVE literally become A LIFE ENDANGERMENT. AND they Continue to Violate RULES (PD-22) AND Covid-19 protocol by Not WEARING MASK WHILE inside the Medical DEPARTMENT

**Action Requested to resolve your Complaint.** I AM Still REQUESTING L.I.D status. I Also ASK that SECURITY CAMERAS be REVIEWED to SUBSTANTIATE My Claims. And proper investigation

**Offender Signature:** Paul Wilson **Date:** 12-07-20

**Grievance Response:**

[illegible] ...sed. Staff ... [illegible] ... was ... and no ... was found to support ... indicates ... holds ... No further action ... [illegible]

**Signature Authority:** [signature] MICHAEL ALSDBROOK ASSISTANT WARDEN **Date:** 12-23-20

**If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.**

**Returned because:** ***Resubmit this form when the corrections are made.**

- ☐ 1. Grievable time period has expired.
- ☐ 2. Submission in excess of 1 every 7 days. *
- ☐ 3. Originals not submitted. *
- ☐ 4. Inappropriate/Excessive attachments. *
- ☐ 5. No documented attempt at informal resolution. *
- ☐ 6. No requested relief is stated. *
- ☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
- ☐ 8. The issue presented is not grievable.
- ☐ 9. Redundant, Refer to grievance #________
- ☐ 10. Illegible/Incomprehensible. *
- ☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** ________

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** ________

**OFFICE USE ONLY**

Initial Submission UGI Initials: ____

Grievance #: ____

Screening Criteria Used: ____

Date Recd from Offender: ____

Date Returned to Offender: ____

**2nd Submission** **UGI Initials:** ____

Grievance #: ____

Screening Criteria Used: ____

Date Recd from Offender: ____

Date Returned to Offender: ____

**3rd Submission** **UGI Initials:** ____

Grievance #: ____

Screening Criteria Used: ____

Date Recd from Offender: ____

Date Returned to Offender: ____

TDCJ DISCIPLINARY REPORT AND HEARING RECORD

CASE: 20210011075 TDCJNO:01739074 NAME: WILSON,PAUL ALEXANDER EA: 5.7
UNIT:AH HSNG: 8J23 ; 43 B JOB: O/S MEDICAL SQ 01 IQ: 060
CLSS: L3 CUST: G5 PRIMARY LANGUAGE: ENGLISH LMHA RESTRICTIONS: NONE
GRDE: MA / MAL OFF.DATE: 09/14/20 03:33 PM LOCATION: AH 8 BUILDING
TYPE: ID

OFFENSE DESCRIPTION

ON THE DATE AND TIME LISTED ABOVE, AND AT AH 8 BLDG MEDICAL,
OFFENDER: WILSON,PAUL ALEXANDER, TDCJ-ID NO. 01739074,
ATTEMPTED TO ASSAULT I OFFICER MARRERO BY HITTING MY CHEST WITH HIS LEFT
SHOULDER. THE ASSAULT DID NOT RESULT IN ANY INJURIES.

CHARGING OFFICER: MARRERO, A. COIV SHIFT/CARD: 1 1

OFFENDER NOTIFICATION IF APPLICABLE INTERPRETER,
TIME/DATE NOTIFIED: 9:44 am 9-15-20 (PRINT) Gaston CSI
YOU WILL APPEAR BEFORE HEARING OFFICER 24 HOURS OR MORE AFTER RECEIPT OF THIS NOTICE. DO YOU WANT TO ATTEND THE HEARING? YES NO IF NO, HOW DO YOU PLEAD? ~~GUILTY~~ NOT GUILTY
OFFENDER NOTIFICATION SIGNATURE: y [signature] DATE: v
BY SIGNING BELOW, YOU GIVE UP YOUR RIGHT TO 24 HOUR NOTICE AND AUTHORIZE THE HEARING OFFICER TO PROCEED WITH THE HEARING.
OFFENDER WAIVER SIGNATURE:________ DATE:________

HEARING INFORMATION

HEARING DATE:____ TIME:____ UNIT____ FOLDER____ FILE____ DSFILE____
COUNSEL SUBSTITUTE AT HEARING:____ FOLDER____ FILE____ DSFILE____
EXPLAIN BELOW BY NUMBER: (1) IF COUNSEL SUBSTITUTE WAS NOT PRESENT DURING PART HEARING, (2) IF ACCUSED OFFENDER WAS CONFINED IN PRE-HEARING DETENTION MORE THAN 72 HOURS PRIOR TO HEARING, (3) IF ACCUSED WAS EXCLUDED FROM ANY PART OF THE EVIDENCE STAGE, (4) IF ANY WITNESSES OR (5) DOCUMENTATION WAS EXCLUDED FROM HEARING (6) IF OFFENDER WAS DENIED CONFRONTATION AND/OR CROSS-EXAMINATION OF A WITNESS AT THE HEARING (7) IF HEARING WAS NOT HELD WITHIN SEVEN DAYS, EXCLUDING WEEK ENDS AND HOLIDAYS, FROM THE OFFENSE DATE AND, (8) IF INTERPRETER USED:
(SIGNATURE)________

OFFENDER STATEMENT:________

OFFENSE CODES: 03.3
OFFENDER PLEA: (G, NG, NONE) |____|____|____|____|
FINDINGS: (G, NG, DS) |____|____|____|____|
REDUCED TO MINOR(PRIOR TO DOCKET)__ (DOCKET)__ (HEARING)__ BY:(INITIAL)____
IF GUILTY, EVIDENCE PRESENTED, CONSIDERED, AND REASON(S) FOR DETERMINATION OF GUILT: A) ADMISSION OF GUILT, B) OFFICER'S REPORT, C) WITNESS TESTIMONY, D) OTHER.
EXPLAIN IN DETAIL:________

PUNISHMENT

LOSS OF PRIV(DAYS)____ REPRIMAND.............. ____
*RECREATION(DAYS)____ EXTRA DUTY(HOURS).......____ REMAIN LINE 3........____
*COMMISSARY(DAYS)____ CONT.VISIT SUSP.THRU__/__/__ REDUC.CLASS FROM __ TO __
*PROPERTY(DAYS)..____ CELL RESTR(DAYS).........____ GOOD TIME LOST(DAYS).____
* OTS(DAYS)..____ SPECIAL CELL RESTR(DAYS).____ DAMAGES/FORFEIT.$____.__
SPECIFIC FACTUAL REASON(S) FOR PARTICULAR PUNISHMENT IMPOSED:________

CREDIT FOR PRE-HEARING DETENTION TIME? YES(DAYS)____ NO / NA
DATE PLACED IN PRE-HEARING DETENTION:____ HEARING LENGTH ____(MINUTES)
OFFENDER SIGNATURE FOR RECEIPT OF FINAL REPORT:________

HEARING OFFICER (PRINT) WARDEN REVIEWER SIGNATURE
(FORM I-47MA) CONTACT COUNSEL SUBSTITUTE IF YOU DO NOT UNDERSTAND THIS FORM.
(REV. 04-10) COMUNIQUESE CON SU CONSEJERO SUSTITUTO SI NO ENTIENDE ESTA FORMA

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Offender Participant Statement*

Unit *(Name and Alpha Code)*: Alfred D. Hughes AH

Report Number: Incident Number (*if applicable*):

**I. NOTICE TO OFFENDER**

You were subjected to a use of force by staff. Staff will write statements about what happened. You may also write a statement so that your side of the story is part of the official Use of Force Report. If you do not write it down, the officials reviewing this use of force will not know your version of the use of force. This form is for your statement.

**II. STATEMENT**

***Instructions:***
- *Answer the questions below, then write a detailed statement in Section h. telling what happened **before**, **during**, and **after** the use of force occurred.*
- *When you write your statement, be sure to include the name and title or rank of each staff member involved in the use of force against you.*

a. Your name *(print)*: _____ TDCJ#: _____

b. What date was the force used on you? _____

c. What happened **before** the use of force that may have caused the officers to use force? *(For example: Did you refuse to obey an order? Did you threaten someone? Were you fighting?)*
_____

d. Where were you when the force was used on you? _____

e. What kind of force did staff use on you? *(For example, an employee used chemical agents on you or held, slapped, or hit you)*
_____

f. If you think staff should not have used force on you, or they used too much force, explain why:
_____

g. Did the force used on you leave marks on you or cause you injury? *(Answer YES or NO)* _____
If 'YES,' what are the marks or injuries? *(For example: bruises, scrapes, broken bones)*
_____

h. Written Statement:

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGEMENT**

To the best of my knowledge, the information submitted in this offender participant statement is complete and accurate.

Signature Date

UOF-2 (2017)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — **INSTITUTIONAL DIVISION**

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*
2. ☐ *Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*
3. ☐ *Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)*
4. ☐ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)*
5. ☐ *Visiting List (Asst. Director of classification, Administration Building)*
6. ☐ *Parole requirements and related information (Unit Parole Counselor)*
7. ☐ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*
8. ☐ *Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)*

TO: Ms. Smith DATE: 10-08-20

*(Name and title of official)*

ADDRESS: A. Hughes Unit

**SUBJECT:** *State briefly the problem on which you desire assistance.*

MS SMITH

I APOLOGIZE FOR THE INTERUPTION. BUT AS SHOCKING AS THIS MIGHT SEEM, YOU HAVE SOME PEOPLE THERE (WORKING FOR YOU), THATS TAMPERING WITH MEDICAL INFORMATION, SENSITIVE INFORMATION. IF I did NOT KNOW WHO YOU WERE, I WOULD NOT BE WRITING THIS LITTLE NOTE. I WOULD JUST REPORT THIS TOO THE UNIVERSITY MANAGEMENT TEAM. SO I AM REQUESTING AN INTERVIEW WITH YOU BEFORE I ACT ON MY EMOTIONS. I HAVE ALREADY CONTACTED THE F.B.I AND A DISTRICT JUDGE ON THE OTHER ISSUES. SOMEONE ALMOST ENDED MY LIFE AND NOW THEY ARE TAMPERING WITH GOVERNMENTAL EVIDENCE. ONCE AGAIN, I DO APOLOGIZE FOR INTERRUPTING YOUR DAY. PLEASE KNOW THAT YOU ARE GREATELY APPRECIATED

Name: PAUL WILSON No: 1739074 Unit: HUGHES

Living Quarters: 8-J-43-B OCT 08 2020 Work Assignment: MEDICAL SQ#01

**DISPOSITION:** (Inmate will not write in this space)

I have reviewed your medical record. I found no evidence of any tampering with it. I cannot order a handcuff pass for you and I am not the providers supervisor. You need to address your security issues with TDCJ ranking officers. OCT 08 2020

T. SMITH RN CNM
10/08/2020

I-60 (Rev. 11-90)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — **INSTITUTIONAL DIVISION**

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*
2. ☐ *Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*
3. ☐ *Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)*
4. ☐ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)*
5. ☐ *Visiting List (Asst. Director of classification, Administration Building)*
6. ☐ *Parole requirements and related information (Unit Parole Counselor)*
7. ☐ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*
8. ☐ *Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)*

TO: Medical Department/Douglas Greene, MD DATE: 01-20-21

*(Name and title of official)*

ADDRESS: Alfred Hughes Unit (Infirmary)

**SUBJECT:** *State briefly the problem on which you desire assistance.* JAN 2 2 2021

DEAR SIR

I HAVE BEEN REQUESTING A NO BEHIND THE BACK CUFF PASS FOR OVER A YEAR AND A HALF NOW, AND I SPOKE WITH YOU ABOUT THIS PROBLEM ON NUMEROUS OCCASSIONS BUT YOUR WORDS WERE ALWAYS (AND CONTINUE TO BE) THE SAME. YOU SAID THAT YOU DONT GIVE CUFF PASSES NO MATTER WHAT THE PROBLEM(S) IS. I RETURNED FROM HG DEC. 22ND AND ROAD AND IT WAS FOR A SECOND TIME MRI. AND A NEW INJURY MRI (LOWER LUMBAR). THE RESULTS WERE THAT THE DISK WERE DISLOCATED THROUGHOUT THE INTIRE CERVICAL SPINE. AND THAT THERE WAS DAMAGE AT L4, L5, S1. AFTER MY RETURN FROM HG, I WAS AGAIN DENIED SHOWERS AND INSULIN ON NUMEROUS OCCASSIONS. I EVEN SENT MY CURRENT PROGRESS NOTE FROM NS TO YOUR OFFICE BY NURSE CLUCH (LVN) THE PAPERS CLEARLY STATED THAT I NEEDED A CUFF PASS. BUT YOU STILL REFUSE TO ISSUE ONE. WOULD YOU PLEASE ISSUE PASS

Name: PAUL WILSON No: 1739074 Unit: HUGHES

Living Quarters: 8-L-57-B Work Assignment: MEDICAL SQUADE #01

**DISPOSITION:** (Inmate will not write in this space)

Your sick call request (SCR) has been screened by Medical and has been determined not to be emergent or urgent. Due to pandemic COVID-19, to limit unit movement and enhance your safety, all non-emergent/non-urgent request will be deferred. All medication renewals will continue to be reviewed. In the meantime, you may resubmit SCR if your condition

JAN 2 2 2021

Milton Griggs
1/22/21

☆I-60 (Rev. 11-90)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE – **INSTITUTIONAL DIVISION**

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*
2. ☐ *Restoration of lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*
3. ☐ *Request for Promotion in Class or to Trusty Class (Unit Warden-if approved, will be forwarded to the Director of Classification)*
4. ☐ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78711)*
5. ☐ *Visiting List (Asst. Director of Classification, Administration Building)*
6. ☐ *Parole requirements and related information (Unit Parole Counselor)*
7. ☐ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*
8. ☐ *Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)*

TO: Medical Department / Records DATE: 01-28-21

(Name and title of official)

ADDRESS: Alfred Hughes Unit

I-60 (Rev. 11-90)

Due to the pandemic COVID-19, to limit unit movement and enhance your safety medical record reviews have been deferred until further notice. R. Aus, Senior Practice Manager

**SUBJECT:** *State briefly the problem on which you desire assista*

To: Medical Records Official(s)

I Have been trying to Review my Medical Records for over a year and a half, but I still Have not been given the opportunity. I need to see my Medical Records. I have Had a number of incidents that pertain too my Health Records. Once again, would you kindly let me review my own Medical Records. Thank you for your understanding

Name: Paul Wilson No: 1739074 Unit: Alfred Hughes

Living Quarters: 8-L-57-B Work Assignment: Medical SQ# 01

**DISPOSITION:** (Inmate will not write in this space)

FEB 01 2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — **INSTITUTIONAL DIVISION**

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*
2. ☐ *Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*
3. ☐ *Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)*
4. ☐ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)*
5. ☐ *Visiting List (Asst. Director of classification, Administration Building)*
6. ☐ *Parole requirements and related information (Unit Parole Counselor)*
7. ☐ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*
8. ☐ *Personal Interview with a reoresentative of an outside agency (Treatment Division, Administration Building)*

TO: MEdicAl DEPARTMENT DATE: 02-05-21

*(Name and title of official)*

ADDRESS: AlfRED HughES Unit

**SUBJECT:** *State briefly the problem on which you desire assistance.*

TO: MEDICAL

[illegible]

ON THE DATE OF JANUARY 5TH, 2021 AT 2:50 pm, I WAS DENIE ANOTHER TRIP TO THE TRIAGE DEPARTMENT FOR INSULIN SHOT. THIS WAS NOT A REFUSAL ON MY PART. THIS WAS ANOTHER DENIAL BY SECURITY OFFICER(S) WILKINS BECAUSE I AM CONTINUOSLY BEING ORDERED TOO PUT MY HANDS AND ARMS IN THE BACKWARDS POSITION, SO THAT I CAN BE HAND CUFFED THIS WAY, I AM STILL REQUESTING A NO CUFF BEHIND BACK PA

Name: PAUL WILSON No: 1739074 Unit: A.H

Living Quarters: 8-L-57-B Work Assignment: MEDICAL SQ.# 01

**DISPOSITION:** (Inmate will not write in this space)

FEB 07 2021

FEB 07 2021

No cuffs pass Not available in this unit

THEODORE, NASIOTIS, PA

☆I-60 (Rev. 11-90)

LAW LIBRARY

**PRINT ONLY** **DATE:** 02-18-21

**NAME:** Wilson Paul **TDCJ#:** 1739074 **HOUSING:** 8-L-57-B

**LAST NAME FIRST**

| List 3 Primary & 2 Alternatives One Book/Citation Per Line | DO NOT WRITE IN THIS AREA |
|---|---|
| 1. TEXAS HUMAN RESOURCES CODE, CHAPTER 121 | 1. NOH |
| 2. | 2. |
| 3. | 3. |
| 4. | 4. |
| 5. | 5. |

*If you DO NOT receive a delivery resubmit.*

| K | INC | = Incomplete Information | COM | = | See Comment Below |
|---|---|---|---|---|---|
| | ? | = Do Not Understand Request | N/A | = | No Name/Number/Housing |
| E | OUT | = Books are Temporarily Out | NOH | = | Not on the Holdings List |
| Y | I/L | = Books are Available from the Intra-Loan Program | NL | = | Not Legible (Cannot Read Writing) |
| | O/S | = The Book Requested is an Out of State Book | NOA | = | Not on the Ad Index |

FEB 19 2021

COMMENTS: LARGE PRINT PLEASE